# CHARLESTON.

## LIMER v. TRADERS CO.

Submitted September 7, 1897—Decided December 1, 1897.

1. CONTRACTS—*Implied Contracts—Building Material.*

    One contracts with another to furnish all materials for, and build complete, a house, and a third party furnishes some material used in construction, the owner of the building knowing of his doing so, but not knowing but that the third party was furnishing such material for the contractor, and the building, when completed, is accepted by the owner from the contractor. *Held,* that no implied contract arises in favor of such third party to compel the owner of the house to pay for such material. (p. 176).

2. CORPORATIONS—*Board of Directors—Contracts.*

    The directors of a corporation cannot separately and individually give consent to or make a contract to bind the corporation. They can act only as a board, their power, being not joint and several, but only joint. (p. 180).

3. VERDICT—*Evidence—New Trial.*

    When the evidence plainly, clearly, and decidedly preponderates against the verdict of the jury, this Court will grant a new trial. (p. 182).

Error to Circuit Court, Harrison County.

Action by one Limer against the Traders Company. Plaintiff had judgment. Defendant brings error.

*Reversed.*

JOHN BASSEL, for plaintiff in error.

JOHN J. DAVIS, for defendant in error.

BRANNON, JUDGE:

Limer brought an action of *assumpsit* against the Traders Company to recover pay for stone, furnished by him, used in the foundation of the hotel at Clarksburg built by said company, known as the "Traders Hotel," and recovered judgment. The corporation made a contract in writing with the Wood Bros. Plaining-Mill Company for furnishing all material and doing all work in the construction of the hotel. The Wood Plaining-Mill Company sublet to McLain Bros. the stone work, which included the furnishing of stone, and McLain Bros. did build the foundation, and used stone furnished by Limer, Sehon, and Gill. The theory for Limer's recovery is two-fold,—one that he had a contract with Jackson, a director, and Richards, who was the representative of Yost & Packard, the architects, to see that the work was according to plan; and the other that, whether there was any express contract or not, the stone was used in the building, as the directors knew, and the corporation, having received the benefit of it, must pay for it. The defendant denied that it had any contract with, or in any way knew, Limer, and claimed that he contracted with McLain Bros. to furnish the rock, and the company had no knowledge to the contrary, and had no idea that Limer would look to it for pay.

The court gave the following instruction for plaintiff : "The court instructs the jury that, where one person has conferred a benefit upon another in the way of property, service, *etc.*, and cannot show a promise in fact by the latter to pay for them, the law will create a promise, because of the receipt of the benefit, to pay what they are reasonably worth ; and if the jury shall find, from the evidence, that Limer conferred a benefit upon the Traders Company by his labor and materials in furnishing rock for its building, and that said company knew of the conferring of said benefit, and has since used and enjoyed the same, then, unless the jury believe, from the evidence, that Limer had contracted with either Wood Bros., the McLains, or some other third party, he is entitled to recover against said company, even if he had no express contract therewith." This instruction is wrong, as applied to this case. It said that if

Limer conferred a benefit upon the Traders Company by his labor and materials, and it knew of its conferring the benefit, and enjoyed the same, and Limer had no contract with Wood Bros., the McLains, or some third party, then the plaintiff must recover. It ignored an important element of the case. As the company had contracted with the Wood Company for the complete construction of the hotel, and would fairly and reasonably suppose that that company was furnishing the rock, or having it furnished, it would not dream that it was being furnished under contract with it. Under these circumstances, before it could be charged with an implied contract to pay, it would have to appear that it knew the rock was not being furnished for the Wood Company or the McLains. It had the best reason to infer that the rock was being furnished under the building contract. Could it be made to pay for the rock furnished by the three different parties merely because it went into the walls and benefited the company ultimately, when it had reason to believe that its contractors were furnishing it under the contract? This instruction ignores the necessity of a knowledge on the part of the defendant that the rock was not being furnished in performance of its contract. If it had known that it was not being furnished pursuant to that contract, then it might be charged, but not otherwise. This instruction excludes this element, arising fairly on the evidence, as unknown to the case; that is, the question whether the defendant knew the rock was being furnished for it, or for the party with whom it had contracted to furnish it. It was misleading in the fact that it does not cover the whole scope of the case as presented by the evidence, binding the jury to a verdict on only part of the case. To repeat, under it the defendant would be liable, though it did not know but that Limer was employed by the chief contractor, the Wood Company, or the subcontractor. One, unwilling, ought not to be made liable for a debt, or when ignorant of facts making him liable. There ought to be a request, or, if he is to be made liable because he derives benefit, he ought to have knowledge of such circumstances as would tell him that in law he would be liable. The proposition is that, if I employ A. to build a house, and B. does the work, and I

have no reason to suppose B. looks to me for pay, but may infer that he is acting for A., yet I must pay B. though I had no contract with him, had no reason to know that he was looking to me for pay, but had every reason to suppose that B. was working under A. A very similar case is *Woodruff* v. *Railroad Co.*, 108 N. Y. 39, (14 N. E. 832). The syllabus is this : "Plaintiffs were subcontractors for the building of a portion of the defendant's railroad, and had performed work under instructions from the engineer in the employ of the contractor in charge of the work, and under agreement with the engineer that such work should be taken outside of the contract; but no written order was given as required by the contract in such case. Held, that defendant was not responsible for such work, and the fact that it took possession of the road when completed, and had the benefit of the work, did not amount to a ratification." The opinion was delivered by Judge Earl, who, in speaking of the contention that the railroad company enjoyed the benefit of the work performed by the subcontractor, says : "Nor is there any sufficient proof that the defendant in any way ratified the agreement alleged to have been made by the plaintiffs with the engineers. It is not shown that it had any knowledge of the alleged agreement made by those engineers, or that it knew that the earth in question had been removed from the cut on its account, and outside of the contract which had been made for the construction of the road. It is true that, after the road was completed, it took possession thereof, as it had the right to do, and that in that way it had the benefit of the work done by the plaintiffs; but that was no ratification of the contract made by the engineers, and did not make it responsible for such work, unless it in some way agreed to pay therefor."

The court gave the plaintiff the following instruction : "The court instructs the jury that if they believe, from the evidence, that Limer contracted to furnish rock for the building for the Traders Company, either with Jackson or some other party who professed and was believed by Limer to be acting for said company, and that Limer did furnish rock as agreed, and the Traders Company knew of his doing so, and said rock were used in the construc-

tion of its building, and it accepted the benefit arising therefrom, either by express words or by keeping silent when it should have spoken, then, although said Jackson or other party had no authority in fact to act for said company at that time, yet if said company accepted the benefit arising from said contract as aforesaid, it thereby ratified said contract, and is bound by it, unless they believe, from the evidence, that said Limer was acting under a contract with Wood Bros., the McLains, or some party other than the Traders Company." Now, if the corporation, while Limer was furnishing the rock, did not know that he was doing so by order of Jackson, would it be debarred from accepting the completed house except under the penalty of assuming a debt to Limer? I say not. Even if it knew, at completion, that Limer furnished rock under Jackson's orders, it could accept from its contractor the completed house without becoming liable to Limer. It ought to have kown, while Limer was furnishing, that he furnished under the unauthorized act of Jackson, so as to give it chance then to repudiate his act. The hotel complete included much work and material besides that of Limer. Especially is this so when, at the time Limer furnished the rock, the defendant had every reason to believe that he was doing so for the chief contractor. I do not see the mission of the words "either by express words or by keeping silent when it should have spoken." Silent as to what? The defendant could expressly accept the house, or say not a word, and yet not be bound for Limer's debt.

The court refused the defendant's request for the following instruction:  "The jury is further instructed that one director of the defendant, the Traders Company, could not enter into a contract for the construction of any part of the building of defendant, unless properly authorized so to do by the board of directors or stockholders of the defendant, and that, in the absence of such authority, the mere fact that plaintiff furnished stone for the defendant's building, and that the same was used in constructing the foundation of such building, would not entitle the plaintiff to recover, unless the fact was known to the board of directors or other governing body of defendant, that the

plaintiff was furnishing such stone under a contract or agreement with one of the directors of the company, and not under a contract or agreement with the subcontractors, the McLains, or the principal contractor, Wood Bros. Plaining-Mill Company." This brings us to that theory of recovery, set up for Limer, based on an express contract claimed to have been made by him with Jackson, one of the directors of the defendant company, and. Richards, an agent of the architect company, superintending the work and inspecting the material entering into it for the architect company. It is not claimed that it was any action by the board of directors, but that a conversation between Limer and Jackson and Richards amounts to a contract to furnish the stone for the company. That act in no sense binds the company, if the claim of Limer be true, as not a tittle of authority in Jackson to so act is shown. 3 Thomp. Corp. § 3906, lays down the law on this point. "Individual directors have no authority as such. * * * The board of directors, to whom the authority to bind the corporation is committed, is not the individual directors scattered here and there, whose assent to a given act may be collected by a diligent canvasser, but it is the board sitting and consulting together as a body. Individual directors, or any number of them less than a quorum, have no authority, as directors, to bind the corporation. * * * So it has been held that the presence, in an unofficial capacity, of two directors of a corporation, at an interview between a contractor for the corporation and its agent for a particular purpose, is no evidence of their assent or the assent of the corporation to an arrangement then made in behalf of the corporation by such agent, and exceeding his powers, with the contractor." And in section 3908 it is laid down that "a separate assent of a majority of the board, obtained when they are not regularly convened and acting together as a board, is not binding upon the corporation, in the absence of a subsequent ratification. When they are not consulting together as a board, they are regarded as acting privately and unofficially." These doctrines are fully approved in *Smith* v. *Cornelius*, 41 W. Va.; 68, (23 S. E. 599); *Pennsylvania Lightning-Rod Co.* v. *Board of Education*, 20 W Va., 360. I therefore think this instruction

was improperly refused. Under the theory of an express contract, how can Limer recover, when his contract was with only one member of the board? And, as to Richards, he had no shadow of authority to bind the company, as he was in no sense an agent or representative of the company.

Next, under the head of a motion for a new trial? Limer swore that Jackson was present with Richards in an office, and that Richards furnished a piece of paper to Limer, which was a mere memorandum of the dimensions of rock to be used in the construction of the hotel. Limer claimed that that memorandum was given, under the contract, to tell him what rock to furnish. The conversation, at best, is very indefinite and uncertain,—too much so to be called a specific contract in so important a matter. Jackson says that he made no such contract, denies Limer's version in toto, and says that that little informal memorandum was written by Richards when Limer asked what kind of rock was to be used in the hotel, and that Richards delivered it, as he had to many others, to afford means of bidding on the furnishing of rock, and was in no sense intended to have any reference to any contract. Other directors of the company deny that there was any contract with Limer. Limer asserts that he made no contract for delivery of rock with McLain Bros.; but the evidence of Joseph McLain and of Wood of a conversation at Limer's quarry shows plainly that Limer contracted with McLain Bros. to furnish the rock. Limer denied that he had received any pay for the rock, but McLain stated that he paid Limer one hundred and eighty dollars; and, though Limer was on the stand after evidence of McLain that he had so paid, Limer did not rebut this evidence of McLain. This shows he had such a contract with McLain. McLain said he had paid him in checks. It was shown by Limer's witnesses that Sehon and Gill, who furnished stone for the foundation, did so under contract with McLain Bros., not with the Traders Company,—a strong circumstance to show that Limer also had contracted with McLain Bros. McLain Bros. failed, and left the country, and it was then too late for Limer to file a lien for material furnished. It is claimed that at that time Jackson said that Limer should be paid by the company, but Jackson denies this, and at

that very time three or four of the members of the board were together, including Jackson, and they made no promise to pay Limer. The company has already once paid the parties that it contracted with for the stone furnished by Limer, and it would be inequitable to make it pay over again, unless its liability to do so is made very, very clear. Limer, on substantially his own evidence, only, asserts that Jackson and Richards contracted with him. Jackson denies it and the evidence preponderates against that theory. When we reflect that the defendant had made a contract with a firm for furnishing material and completing this hotel, we appreciate how entirely improbable it is that the company would turn right around, at the very inception of the work, after the execution of the contract, in violation of the rights of the contractor under it, and make another contract with Limer for a part of the material. It is so utterly improbable that a reasonable man naturally refuses to accept that theory. There is in the case, considering this building contract, an inherent probability, not depending merely on witnesses, that no such oral contract was made. Jackson was prominent in the enterprise of building this hotel, and is it reasonable to suppose that he would go outside of that contract, to do what the contractors under it were doing, and incur an additional liability upon the company? The motion for a new trial does not depend merely on the credibility of witnesses, or only upon the weight of their evidence; but these facts, creating an intrinsic improbability of this additional contract overthrow that theory, and justify us in saying that the verdict is contrary—plainly contrary—to and unsustained by the evidence. The oral evidence alone preponderates that way, but when we add to that consideration the utter improbability of any contract with Limer, arising from the fact that the whole work had been let out to other parties, we are justified in setting aside the verdict. Our ruling in *Davidson* v. *Railway Co.*, 41 W. Va., 407, (23 S. E. 593,) and *Johnson* v. *Burns*, 39 W. Va., 659, (20 S. E. 686) and many other cases, sustains this position. Therefore we reverse the judgment and grant a new trial.

*Reversed.*