734

# CHARLESTON.

*L. S. Hall* and *A. E. Larrick,* for plaintiff in error.
*W. J. Postlethwait,* for defendant in error.

Lively, President:

The parties will be designated as in the trial court.

On motion of plaintiff, the court set aside the verdict in favor of defendant and granted a new trial.   Defendant prosecutes error.

The declaration contains the common counts in assumpsit only, accompanied by a bill of particulars, being an account for $158.90 for 1,589 cubic yards of stone at ten cents per cubic yard.

It appears that the county court was permanently improving three roads in Magnolia District, designated, respectively, as (1) Magnolia-Doolin-Newdale Road; (2) Centre-West-Newdale Road; and (3) Proctor-Newdale Road.   The account for

stone sued on was used on this last named Project No. 3, the Proctor-Newdale Road. The money used for building these projects was obtained from a bond issue authorized by the people, and an advisory committee was authorized by the bond issue, and selected by the county court from among the citizens living near the route of each project to assist the court in expending the money and making the permanent improvements. The committee appointed for the Proctor-Newdale Road (No. 3), the project around which this controversy revolves, consisted of Marion Smith, Hayes Hall and N. J. Klug, and with the advice and concurrence of this committee the Proctor-Newdale Road (No. 3) was let to a contractor, William McCormick, who contracted to furnish all labor, materials, etc., and complete the road for a stated sum. Project No. 2, by advice and consent of the committee for that project, was contracted to Springer & Springer, contractors. But Project No. 1, the Magnolia-Doolin-Newdale Road, was built by the county court and the committee for that project, the stone having been purchased from the farms along this route and elsewhere, and local labor having been employed. For the purpose of obtaining stone for this Project No. 1, the Magnolia-Doolin-Newdale Road, defendant and plaintiff entered into the following writing: ''This contract made this the 5th day of May, A. D., 1928, between County Court of Wetzel County, a corporation, party of the first part, and Joseph Hohmann, party of the second part. This contract witnesseth; That for and in consideration of ten cents per cubic yard, of stone, the said parties of the second part do hereby sell, unto the said party of the first part, the following property, to-wit, the privilege of quarrying and removing stone from quarry, stone to be measured by committee after being placed in road and rolled. Witness the following signatures and seals.'' Plaintiff's stone quarry, mentioned in this contract, was situated on the Centre-West-Newdale Project (Project No. 2) and there seems to be no controversy that the stone thus privileged to be taken from his quarry was to be used on Project No. 1, Magnolia-Doolin-Newdale Road, which was being constructed by the county court, and was not let to a contractor.

Project No. 3, let to McCormick, contractor, was to be a

gravel road, but later, on August 28, 1928, by verbal agreement confirmed and reduced to writing on October 10, 1928, the construction of one and one-half miles of this project was changed to stone base, the contractor to furnish all material and labor. On September 6, 1928, McCormick addressed a letter to plaintiff inquiring if he could get stone from plaintiff for the one and one-half miles on Project No. 3, to which plaintiff made no reply. Later, in that month, McCormick contracted with one O. I. Marty, whose property adjoined plaintiff's quarry, to furnish him the stone for the one and one-half miles stone base at two dollars per cubic yard when rolled. Marty delivered the stone, but about the first of November, 1928, 1200 feet of the stone was condemned by the inspector as being soft. The inspector and Marty went to the quarry, situate on Project No. 2, and the inspector pointed out several places in the quarry where the rock appeared hard and told him that the rock taken from those places would be accepted. McCormick completed his contract with the county court, paid Marty for the stone furnished by him, and the county court accepted the road. It appears that the county court did not know that Marty was in any way connected with the work, or had been given a sub-contract under McCormick to furnish material. It appears also that plaintiff knew that Marty was taking stone from his quarry, but made no inquiry as to his right to do so. It appears also that plaintiff presented his bill to McCormick for payment for the stone removed by Marty, but McCormick having paid Marty, declined to pay further. On November 8, 1929, plaintiff made out his bill against the county court for the $158.90 for 1,589 cubic yards of stone at ten cents per cubic yard and presented it to the court on that date. Sometime in March, 1929, plaintiff appeared before the county court, then in session, and showed them the letter from McCormick, the contractor, dated September 6, 1928, inquiring if he, McCormick, could get the stone from plaintiff for the one and one-half miles on Project No. 3, and to which plaintiff had made no reply, and then asked the court to whom he should look for payment; and was told by Morgan, a member of the county court, to get the committee on Project No. 1 to measure the stone and the court would then pay for it, and charge the

same against McCormick's estimate. The committee for Project No. 1 refused to measure or stand for any payment as to its project, and also the committee in charge of Project No. 3, the project where the stone was used, refused to measure the stone or have anything to do with the controversy. The county court refused payment, and this suit followed.

Plaintiff's theory of recovery is, first, on defendant's express promise under the contract in writing, dated May 5, 1928, giving defendant the privilege of taking stone from plaintiff's quarry. That theory is untenable, for that contract related to the construction of the Magnolia-Doolin-Newdale Road, which was being built by defendant, and for which it purchased the stone; and, moreover, defendant did not take or authorize the taking of the stone sued for and used on McCormick's contract, the Proctor-Newdale Road. Plaintiff's second theory for recovery is on defendant's implied promise to pay because of its acceptance of the road, upon its completion, from McCormick, the contractor, knowing when it accepted the road that plaintiff's stone had been used therein. This theory is likewise untenable, for it clearly appears that defendant had contracted with McCormick for a complete road, the latter to furnish all material therefor and labor thereon. Its express promise was to pay McCormick for this stone. It could not at the same time have an implied promise to pay plaintiff for the same stone. McCormick, upon completion and acceptance of the road, could compel payment of the contract price. It must be remembered that defendant did not know that Marty, or McCormick through Marty, was furnishing stone from plaintiff's quarry. Much stress is laid upon the statement of Morgan, a member of the county court, then in session, that the court would pay the bill for the stone if the advisory committee would measure it, and that then McCormick's estimate would be charged with the amount shown by the measurement. Even if this colloquy could be upheld under the statute of frauds as a promise to pay the debt of the contractor (the court not having made any writing on or off its record in respect thereto) the promise was conditioned upon the action of the advisory committee which refused to act. It is well settled that a county court can do only

such things as are authorized by law, and in the mode prescribed. It acts by its record. Here, the stone had already been placed in the road without the knowledge or consent of the county court, and an implied contract to pay on quantum meruit for benefit received does not follow as a conclusion of law. *Goshorn* v. *County Court*, 42 W. Va. 735, relied upon was where the two members of the county court not in session, had given a written order for delivery of goods, which were delivered and used for county purposes. The principals of that case are not applicable here.

The court fully instructed the jury. The jury was told, by instructions for plaintiff, that if they believed plaintiff had a contract with defendant for stone at a stipulated price, and that defendant's stone was taken by defendant's agents and placed in Proctor-Newdale Road, and defendant had received the use and benefit thereof, that plaintiff had made no contract with any other person to take the stone, and that he had not been paid therefor; then they should find for plaintiff. Again they were instructed that if they believed defendant had ratified the taking of the stone and had agreed to pay for it, they should find for plaintiff; and again they were told that if they believed that the stone was not taken under contract, yet if it was taken and used on the road, and defendant had received benefit therefrom and had not paid for it, then they should find for plaintiff. By one of defendant's instructions they were told that if they found that defendant contracted with McCormick to build the road at his own costs for all material and labor used therein, and if they believed that McCormick contracted with Marty to furnish and deliver the stone on the road, that Marty did so, and took the stone from plaintiff's quarry, without authority or knowledge of defendant, then they should find for defendant. This instruction covered the theory of the defense, and was proper under the evidence. The jury was well warranted in finding for defendant, and we perceive no error in the trial which would justify the court in setting aside the verdict. No complaint is made as to the giving or refusing of instructions.

Where one contracts with another to build a structure and furnish all labor and material, and a third party furnishes

some of the material used without the knowledge of the party for whom the structure is being built, and the structure is accepted from the contractor when completed, the law will not imply a promise of the owner of the structure to pay such third person for his materials. *Limer* v. *Traders Co.*, 44 W. Va. 175.

It is argued that the evidence is in conflict, and that the action of the lower court in setting aside the verdict should be given peculiar weight. It is quite well established by our decisions that a verdict upon conflicting evidence, under proper instructions, will not be disturbed unless plainly wrong, or manifestly against the weight of evidence. Vol. 1 Cumulative Supplement Ency. Dig. Virginia and West Virginia Reports, page 386. On the other hand, the action of the court in setting a verdict aside on conflicting evidence is entitled to peculiar weight. *Reynolds* v. *Thompkins*, 23 W. Va. 229; *Vaughan* v. *Hospital*, 103 W. Va. 156, 162; *Wilson* v. *Fleming*, 89 W. Va. 553, 557. This rule is applicable where the evidence is conflicting and the verdict is against the weight of the evidence. *Miller* v. *Ins. Co.*, 12 W. Va. 116. We can see little conflict in the material evidence, and as we view it, the verdict is not manifestly against the weight of evidence.

The order for new trial will be set aside, the verdict reinstated and judgment of nil capiat entered here.

*Reversed and rendered.*