SYLVIA KAUFMAN *v.* CHARLESTON TRANSIT COMPANY
(No. 8383)

Submitted May 6, 1936.   Decided June 16, 1936.

*R. E. O'Connor* and *J. Howard Hundley,* for plaintiff in error.

*Salisbury, Hackney & Lopinsky* and *J. Blackburn Watts,* for defendant in error.

LITZ, JUDGE:

Defendant, Charleston Transit Company, a corporation, is a public carrier of passengers by motor buses in the City of Charleston.   It is aggrieved by a judgment of the court of common pleas of Kanawha County, on a verdict of $9,000.00 against it in favor of the plaintiff, Sylvia Kaufman, for personal injury sustained by her in endeavoring to alight from one of its buses while a passenger thereon; the circuit court of Kanawha County having refused a writ of error.

Plaintiff, who is fifty years of age, asserts that the doors of the bus caught her neck as she attempted to alight, causing an aneurysm or dilatation of the carotid artery on the left side of the neck at the point of its division into the internal branch which supplies the brain, eye and ear and the external branch which furnishes blood to the face, neck and scalp. She was, at the time of the injury and had been for five or six years, employed by the Capitol Theatre in Charleston. According to the testimony on her behalf, she and Sol Bloom together boarded a bus of defendant at Capitol Street in Charleston about 5:30 P. M., January 23, 1934, for Maxwell Street on which he resided; she, her husband (Sidney J. Kaufman) and son having been invited to the Bloom home that evening for dinner. The bus, on which they were riding was twenty-eight feet long and equipped with two double shaft steel folding doors on the right side thereof which were operated by pneumatic engines or air cylinders controlled by the driver. One of the doors near the front served for the admission, and the other, ten or twelve feet from the rear, for the discharge, of passengers. A space of 5-1/8 inches between the frames of the doors when closed was filled by rubber strips or bumpers about 2-1/2 inches wide attached to the front edges thereof. There was a small vestibule inside the bus at the rear doors, sixteen inches above the ground and fourteen inches below the floor of the bus. After traveling through the city some two miles, the bus stopped at the junction of Washington and Maxwell Streets for the admittance and discharge of passengers. Plaintiff and Bloom immediately rose to get off. He led the way to the rear door which had been opened. Stepping to the street, and turning to assist plaintiff in alighting, he observed that her neck was caught between the panels of the door. Because of approaching darkness and snow and ice in the street, she had leaned forward before stepping to the ground in order to make sure of her footing. While in this position, the doors closed on her neck. She was soon released and rejoined her

companion, Bloom, after upbraiding the driver for closing the door while she was in the act of alighting. Plaintiff did not at the moment realize that she had suffered any serious injury from the accident, but after walking a short distance, became faint and was assisted by Bloom to his home a block away. A few minutes after they reached the Bloom home, her husband arrived, and, being informed of the incident, after inquiring of her seemingly disturbed condition, immediately reported the accident by telephone to Pat Donnally, a representative of the company, who later during the night, interviewed the driver of the bus concerning the matter. Plaintiff and Bloom testified that the doors seemed to strike (or close on) her neck two or three times before being released. She also testified that soon after reaching the Bloom home she experienced pain in her head and neck, behind the left ear, which did not abate during the night; that she felt so ill and uncomfortable that she, her husband and son went home soon after dinner; that the pain later extended to her left eye and left ear; that on the third day after the accident, she consulted Dr. V. E. Holcombe, an eye, nose and throat specialist, of Charleston, concerning her physical condition resulting from the injury; that while at the office of Dr. Holcombe on the same occasion, after he had advised treatment for the injury, she informed Donnally (representative of defendant) by telephone of Dr. Holcombe's recommendation; that Donnally responded by telling her to "go ahead and have the treatments as the doctor thinks and let me hear from you;" that thereafter, Dr. Holcombe treated her regularly until about February 13th, when he advised her to see other physicians; that she went to Cincinnati about February 17th and was there advised by Dr. Samuel Iglauer, an ear, nose and throat specialist, to consult Dr. J. Louis Ransohoff, a specialist in blood vessel surgery; that she was later examined by Dr. Ransohoff, who, as a result of the examination, operated on her March 6, 1935, by exposing and wrapping the common carotid artery with a fascie or prepared animal membrane; that she had not been relieved by the oper-

ation and still suffered pain in her head, left eye and ear; that she is extremely nervous, experiences dizzy spells and buzzing in the left ear; and that, in her opinion, her hearing in the left ear has become defective because of the injury. Dr. Holcombe testified that he did not at the time of treating plaintiff detect any pulsation in the carotid artery on the left side of the neck but did observe enlarged glands along the anterior border of the sternomastoid muscle and in the vicinity of the bifurcation or division of the artery where the pulsations later developed. Doctors Iglauer and Ransohoff testified that their examination of plaintiff disclosed a pulsating mass an inch in diameter at the division of the internal and external branches of the carotid artery. This condition, which is termed an aneurysm or dilatation of the left carotid artery, resulted from a rupture of the two inner layers of the artery which, according to the medical opinion, had been caused by trauma. Two methods may be used to relieve an aneurysm of the carotid artery. One consists in reducing the flow of blood through the common artery by a wrapping process; the other, known as ligation method is applied by cutting and tying off the common artery, thus stopping the blood flow through the internal branch of the artery to the brain, eye, and ear and through the exterior branch to the face, neck and other superficial structures. Dr. Ransohoff adopted the wrapping process as the safer of the two methods. The reason for so doing, according to his testimony, is that after a patient reaches the age of forty to forty-five years, the collateral circulation in the brain is not sufficiently adaptable to meet the situation resulting from the cutting off of the large source of blood, through the internal carotid artery. He further stated that the operation on patients of plaintiff's age by the ligation method results in softening of the brain or death in twenty-five or thirty per cent of the cases. Dr. V. T. Churchman, an eye, ear, nose and throat specialist of Charleston, testified that the wrapping process used by Dr. Ransohoff is not a practical method for removing or relieving an aneurysm of the artery and that the only

practical method is the ligation process, consisting, as already stated of the severance and tying off of the common artery. Dr. Churchman also testified that the present condition of plaintiff was so serious that a rupture of the artery might occur at any time, resulting in death. There was other medical testimony tending to show that she was permanently disabled as a result of the injury. She testified that she had not been able to resume her employment with the Capitol Theatre since the operation, and was unable to perform her household work. There is also medical evidence that the condition of plaintiff is gradually growing worse. The driver of the bus denied knowledge of the accident. None of the passengers except the plaintiff and Bloom were produced as witnesses by either party. There was no denial of the report of the accident by the husband of plaintiff to defendant, through Pat Donnally, twenty or twenty-five minutes thereafter, nor of the telephonic conversation between her and Donnally on her first visit to Doctor Holcombe. The actual damage already sustained by plaintiff, including expenses and loss of services due to the injury, amount to $1376.00. This sum includes a fee of $600.00 to Dr. Ransohoff. Dr. Churchman says his fee for the operation recommended by him is $500.00.

Defendant doubts the evidence that plaintiff was injured while attempting to alight from the bus, and contends that if in fact she received the injury (causing her disability) in the manner claimed, the same was due to her contributory negligence. Error is also assigned to the rulings of the court in the granting and refusal of instructions.

In questioning the claim of plaintiff that she suffered the injury complained of by her neck being caught between the doors of the bus, defendant relies upon testimony adduced by it to the effect that the speed of the doors in closing was not sufficient to cause the injury; that they could not be operated in the manner described by the plaintiff and her witness, Bloom, by closing on or striking her neck in quick succession. In view of the chain of circumstances and the positive testimony of the

witnesses for the plaintiff, we would not be warranted in holding as a matter of law that the accident did not occur in the manner claimed by the plaintiff. It may have seemed to her because of the excitement, produced by her sudden predicament, that in trying to release herself the doors were striking her when, in fact, she was forcing them apart by the movement of her head. As the defendant denies knowledge of the accident, there was no testimony upon which to base the claim of contributory negligence except that of the plaintiff; and her testimony does not tend to prove contributory negligence. It certainly was not negligence on her part to pause before stepping into the icy street. There was nothing to warn her that by doing so the driver would negligently close the doors on her neck.

## INSTRUCTIONS FOR PLAINTIFF COMPLAINED OF BY DEFENDANT

Plaintiff's instruction No. 1 told the jury, substantially, that "in tenderness to human life and limb" the law required the defendant to exercise the highest degree of care consistent with the practicable operation of the bus, and that if defendant was guilty of negligence, constituting the proximate cause of the injury, they should find for the plaintiff, unless they further believed from a preponderance of the evidence that the plaintiff committed some act or acts of negligence contributing proximately to the injury. This instruction is in almost identical language of an instruction considered and approved in *Bennett* v. *Bartlett*, 110 W. Va. 478, 158 S. E. 712, in which it is held that the operator of a motor bus owes to passengers for hire the highest degree of care consistent with the practicable operation of the vehicle. The introduction of the instruction, "in tenderness to human life and limb," might well have been eliminated upon the ground that it may tend to create an unfair appeal to the jury.

Plaintiff's instruction No. 2 told the jury that the law requires the defendant to prove the defense of contribu-

tory negligence by a preponderance of evidence. It is urged that the instruction should have stated that contributory negligence must be established by a preponderance of the whole evidence upon the theory that the jury may consider evidence of the witnesses for the plaintiff as well as the testimony of witnesses for defendant in determining whether the defense of contributory negligence has been established. This is a correct statement of the law, but we do not think the instruction in question is ground for reversal first, because, as already indicated, there is no appreciable evidence tending to establish contributory negligence, and second, for the reason that the apparent defect in the instruction is cured by plaintiff's instruction No. 1 and instructions granted on behalf of the defendant. In considering a similar instruction in *Truman* v. *Wink-O Products Co.*, 96 W. Va. 256, 122 S. E. 745, 746, this court said: "We may assume that this instruction, standing alone, would tend to exclude from consideration plaintiff's evidence, and, therefore, for this reason, mislead the jury. The court, however, at the instance of the defendant, submitted to the jury seven instructions fully supplementing the one under consideration in the particular complained of." The conclusion was then reached that in view of the rule requiring instructions to be read and considered as a whole, the defect was cured by other instructions, and, therefore, was not ground for reversal. We reached a like conclusion in the case of *Agsten & Sons, Inc.*, v. *United Fuel Gas Co.*, 117 W. Va. 515, 186 S. E. 126, decided at this term.

Defendant also complains because several instructions requested by it were refused by the trial court. One of these instructions would have told the jury that the plaintiff had not sustained a permanent injury and that damages could not be determined on the basis of permanent injury. In view of the grave condition of plaintiff and the probably serious or fatal results that may follow, the instruction was properly refused. The court refused an instruction offered by defendant to the effect

598

that if the jury should believe from the physical facts that it was impossible for plaintiff to have sustained the injury complained of in the manner described by her, the jury should find for the defendant. The court also refused two other instructions of similar import requested by defendant to the effect that if plaintiff carelessly stuck her head between the panels of the door she could not recover. As the court gave instructions at the instance of defendant to the effect that if they should believe from the evidence that the plaintiff did not sustain an injury while attempting to alight from the bus in the manner claimed by her, they should find a verdict for the defendant, we do not think that it was error to refuse the instructions in question.

The judgments complained of are affirmed.

*Affirmed.*