FRANCIS J. WINE

*v.*

CITY LINES OF WEST VIRGINIA

(No. 10228)

Submitted October 3, 1950. Decided November 14, 1950.

*Stathers & Cantrall* and *James P. Robinson,* for plaintiff in error.

*Steptoe & Johnson* and *Oscar J. Andre,* for defendant in error.

Fox, JUDGE:

This is an action of law, instituted in the Circuit Court of Harrison County on October 15, 1947, in which Francis J. Wine was plaintiff and the City Lines of West Virginia, Inc., a corporation, was defendant, in which the plaintiff seeks recovery from the defendant for injuries alleged to have been sustained by him through the negligence of an employee of the defendant in the operation of a passenger bus operated for hire in the City of Clarksburg in said county. The trial of the case began on February 9, 1948, and a verdict in favor of the plaintiff was returned on the day following in the sum of $4,986.50. A motion to set aside the verdict was made at the time, and on April 25, 1949, said motion was sustained. On October 31, 1949, on the petition of the plaintiff, we granted this writ of error.

The case was tried on the first count of the declaration which alleged the duty of the defendant to manage, operate and control the motor bus involved in this case in a careful and prudent manner, and with due care and diligence for the safety and welfare of passengers in boarding said motor bus. The declaration alleged that: "* * * wholly disregarding his duties in that behalf, by and through its agents, servants, and employees, then and there negligently, unlawfully, and carelessly failed to manage, operate, and control said motor bus in a careful and prudent manner and with due care and diligence for for the safety and welfare of the plaintiff as a passenger as he was boarding said motor bus; * * *.", and then proceeds to state in detail the manner in which the alleged injury to plaintiff resulted, from such lack of care and diligence. It will be observed that no question is raised as to defects in equipment, nor is there, apparently, any denial of the liability of the company for the acts of its employee in the operation of the bus had any injury resulted to plaintiff. The defense, so far as the question of liability is involved, is that the injury alleged to have been sustained by the plaintiff could not have been caused, and was not caused, by any act of defendant's employee.

The injury alleged to have been sustained by plaintiff, and on which he instituted this action, occurred on October 21, 1946. Shortly after five o'clock in the afternoon of that day, plaintiff was in the act of boarding a passenger bus operated by the defendant, at the corner of Main and Sixth Streets in the City of Clarksburg, prepared to pay his fare, making him a passenger for hire. Several other persons boarded the bus at the same time and preceded the plaintiff. One or more of these passengers had taken seats in the bus, and immediately preceding plaintiff was a lady who stopped at the front of the bus where the driver was seated. While standing there paying her fare, she obscured the driver's view of anyone who might be back of her seeking to board the bus. The driver of the bus, defendant's employee, apparently assuming that all persons seeking to board the bus were inside the same,

attempted to close the bus door. This door is operated by the driver by the application of compressed air. The door, made up of steel, glass and rubber, is composed of two parts, one towards the front of the bus and the other towards the rear, and each part is made up of two panels held together by hinges. Each of the doors, when opened, folds on its hinges towards the front and rear of the bus, and when the air is applied in closing, the doors open automatically, first the panel next to the bus on the right and left of the entrance and next the two panels next to the center of the door. Pressure is about seventy pounds to the square inch when the air is applied, and the evidence is that the doors close rapidly. There were two steps to the entrance of the bus, one step from the street and the next to the level of the floor of the bus. The evidence shows that plaintiff reached the second step of the bus, or at least his left foot was placed thereon, at the time of the accident, and he was in the act of entering the bus sidewise to a certain degree. At this time air was applied and the door began to close, and in unfolding came in contact with the back or left shoulder of the plaintiff on the one side, and with the hip and right arm and wrist of the plaintiff on the other. Plaintiff claims that he had his right wrist in a position between his right hip and ribs over a hard leather belt, termed a miner's belt, held together by copper rivets, and that when the bus door unfolded it struck his wrist, crushing it against the hard belt and caused the injury of which he complains. The operator of the bus testified that he attempted to close the door and immediately recognized that something unusual had occurred, and that he immediately opened the door and plaintiff came on into the bus, made no outcry, took his seat in the bus, and that the driver did not know that any injury had occurred. Another witness, seated in the bus saw plaintiff come into the bus after the alleged injury, and first stated on cross-examination that plaintiff made no statement as to any injury having occurred, "but he got awful pale after he came and sat down. * * *" He stated later in his testimony on redirect examination that: "He didn't say anything, only got sick, said his arm hurt

him, said that much." On cross-examination he testified: "I didn't hear any complaint. The fact of the thing I didn't know the man was hurt until afterwards." A brother of the plaintiff testified that he was on the bus, saw the accident, heard nothing said, but that after they reached home that night plaintiff suffered great pain from an injury to his wrist. The next day plaintiff went to his physician in Clarksburg, Dr. Thomas V. Gocke. Dr. Gocke examined him, found that his wrist had been injured causing a loss of movements in his hand which he attributed to an injury to the median nerve, described as the nerve in the wrist near the inside and outer side of the wrist and which controls the reflexes of the fingers of the hand, and perhaps other processes of the arm and hand. Dr. Gocke looked after plaintiff's injuries for some weeks, and later referred him to Dr. Humphries, a specialist in that line of injuries, residing in Clarksburg, who also testified that some injury to the median nerve existed and prescribed certain treatment, including a brace. Neither of these physicians was able to state what caused the injury, and particularly whether or not the closing of the bus doors, as indicated above, could have caused the same, although Dr. Gocke stated that it could have done so. The testimony is somewhat confused as to the permanent nature of the injury. It shows that there has been some improvement, but that there was something like forty to fifty per cent disability in the use of the wrist and fingers of the right hand at the date of the trial. The testimony tends to show that this condition will likely improve, but it is stated at one point that the injury is a permanent one. The contention of the defendant is that the closing of the doors of the bus could not possibly have caused the condition from which plaintiff is suffering, and in connection with this contention assert that certain other injuries and happenings to plaintiff preceded the alleged injury of October 21, 1946, which could have caused the condition on which this action is based. With these matters we will now deal.

Plaintiff suffered an accident in the year 1942, by which his right wrist was fractured. After partical recovery

from this injury, he suffered another fracture of the same wrist, which fracture caused some deformity. He was treated for these fractures by Dr. Gocke, the same physician who treated his latest injury, and the one on which this action is based. Dr. Gocke says that the 1942 injury resulted in some injury to the median nerve of the right wrist. However, the testimony shows that plaintiff recovered from this injury to his wrist and to the median nerve, because he later engaged in heavy manual work. On October 16, 1946, five days before the bus accident, plaintiff was employed by Five Counties Lumber Company, operating near Jane Lew. In his work he handled heavy blocks of timber weighing as much as one hundred and fifty pounds. While in this employment a piece of bark propelled by some type of machinery struck him on the outside of the right hand causing abrasions. His employer required him to go to a physician to ascertain the extent of his injuries, and he was immediately taken to a local physician who found nothing disturbing, but recommended that the wrist be X-rayed to determine if any bones had been broken. On the same day, plaintiff was taken to Weston where his wrist was X-rayed, and it was found that no bones were broken. Plaintiff thereafter returned to his work with the Lumber Company, and did the same character of work as he had performed prior to the accident of October 16, and worked at his job as late as the morning of October 21.

It is these former accidents which furnish the background for defendant's contention that the alleged accident on the bus on October 21, 1946, did not cause the condition which followed, or, at least, that there was no sufficient showing to warrant a jury finding that the bus injury caused the condition complained of. The contention of the plaintiff is that even if the median nerve had been injured in either of these former accidents, it was not responsible for the condition from which plaintiff now suffers; and further, that the accident occasioned by closing the doors of the bus could have reactivated an old injury and caused such condition.

It will be observed that there is little conflict in the testimony. The trial court set aside the verdict on two grounds. First, that physical facts, as developed by the evidence, clearly show that plaintiff could not have been injured in the manner he claims, and, second, that the verdict was excessive. We will first deal with the ground first stated above.

One of the grounds on which the trial court held that the injury alleged to have been sustained by plaintiff, could not have resulted from the closing of the bus doors, was that the bus doors when closed create a cushion of soft rubber about 4⅝″ thick. This is true when the door is entirely closed, but the testimony also shows that, considering the presence of plaintiff's body in the door space, the door could not have been entirely closed, and that the parts of the door which struck plaintiff's body must have been the partially unfolded panels held together by hinges which opened first, and which, if unimpeded, would open automatically by the unfolding of the two panels next to the center of the door on which the soft rubber was placed. All this makes problematical just how the accident occurred or could have occurred. The exact position of plaintiff's body, the part of the door which came in contact with his wrist all contribute to the uncertainty of just how plaintiff's injury came about. It is not impossible that plaintiff's body could have been in a position where the impact of the door would have been at the point where it could have crushed plaintiff's wrist against the hard leather belt he wore. But all this is largely theory. No one testified clearly as to the exact position of plaintiff's body in the door space. Neither the driver of the bus, nor any other witness, other than the plaintiff, actually know how the plaintiff's wrist was struck, if it was struck, although the witness Edward Wine comes close to saying that he saw how the accident happened. We must depend on plaintiff's testimony on that point. We agree that it may be plausibly argued that the accident could not have occurred in the manner in which plaintiff testified that it did occur; but when we consider

this argument, we are confronted by the inescapable fact, as shown by the evidence, that in some manner plaintiff was injured at that time. While he made no outcry at the time, it is clear from his own testimony, and that of his brother, that he suffered from the injury during that night; and when he called on his physician the next day, we know, as a medical fact, that his wrist was in a serious condition, although the physician was unable to state what caused that condition. Dr. Humphries testified that an injury to the median nerve would be followed immediately or within a period of hours by pain and disability, as seems to have happened in this case. The testimony shows that up to the time of the bus accident he was an able-bodied man and had been, on the very day of the accident engaged in heavy manual labor, which tends to show that his former accidents had not seriously affected his ability to work. We are dealing with facts, not a theory. Plaintiff was injured and his injuries proved serious. Undoubtedly, there was the closing of the bus doors which struck plaintiff's body on the right side and on the left. Immediately following, an injury is discovered which we may admit is not easily explained as to its cause. We are impressed with the idea that this is a question which a jury, from all the facts and circumstances, should be permitted to pass upon and decide. The jury was properly instructed, from the standpoint of the defendant, and no errors were alleged in the giving of any instruction which affects the jury verdict. We cannot say, as a matter of law, that the verdict returned by the jury was plainly wrong, or without any evidence to support it. We are of the opinion that in setting aside the verdict returned by the jury on the ground of failure to establish defendants liability by evidence and circumstances, the trial court erred.

The second question involved the amount of the verdict. Plaintiff was injured on October 21, 1946. This case was tried in February, 1948, approximately sixteen months thereafter. The evidence is clear that plaintiff has been disabled from following his usual occupation during all

that time, and there is evidence tending to show the average wage which plaintiff would have received had his injury not occurred. Of course, we cannot say he would have been employed every day of that time, but the loss of wages is usually calculated on the assumption that an able-bodied man, willing to work, can secure steady employment, even though the job he had at the date of an injury may have ended. It is assumed, in such circumstances, that other employment will become available. Plaintiff's claim of loss of wages amounts to something in excess of four thousand dollars. There is some evidence indicating that the average wage, calculated for the period involved, would not have reached that aggregate, but in any aspect of the case, loss of wages accounts for a substantial part, more than half, of the verdict. Medical bills and the cost of a brace aggregate the sum of $173.50. The bill of particulars filed by the plaintiff in the case, on the demand of the defendant, sets up the alleged permanent injuries to his right arm and severe pain in his right arm and right shoulder, including stiffness, weakness, jerking and shaking of and the inability to flex the fingers and wrist and elbow of said arm; injury to and irritation of the median nerve and swelling of tendon sheaths in and near the right wrist, including diminution sensation and numbness in the fingers of the right hand, and torn ligaments of the right arm at the wrist. There is testimony to substantiate these allegations and the claim that plaintiff suffered pain and inconvenience from his injury in addition to his inability to work. There is the further fact that the evidence tends to show that, while in the opinion of the physicians, the condition will in time clear up, there is no indication of how long his present inability to work will continue. This uncertainty as to the permanency of his injuries, may inhibit the allowance of damages for future pain and suffering, and, in fact, the jury was not permitted to consider future pain and suffering under the instructions of the court. It did not, however, prevent the jury from taking into consideration any reasonable probability of the permanent effect of the injury sustained by the plaintiff. Instruction No. 3, given

by the court at the instance of the plaintiff, told the jury that if the alleged injuries to plaintiff were caused by negligence on the part of defendant, and as a proximate result thereof, the jury should allow him compensation for the injuries sustained from defendant's negligence; that in estimating plaintiff's damages they should take into consideration his mental and physical pain and suffering, if any, resulting from said injuries; the reasonable value of the time lost from his work, if any, resulting from said injuries; and such sums as had been reasonably expended by him for treatment because of said injuries. It is clear, therefore, that the jury confined the damages to those which they thought had been sustained by the plaintiff at the date of the trial, and future pain and suffering, together with future loss of wages, were not considered. It may be assumed that a good part of the verdict returned by the jury was based on plaintiff's alleged loss of wages, during the period of his disability, but of this we cannot be certain. It is clear from the evidence that the claim of plaintiff for loss of wages, as set up in his bill of particulars, could have been greatly reduced without affecting the reasonableness of the verdict because of the other elements of the damages involved. We are of the opinion that we cannot say, as a matter of law, that the verdict is excessive.

We are not unmindful of the weight which should be given to the findings of a trial court on the question of sustaining or overruling the verdict of a jury. As has been often said, a trial court is in a position to hear the testimony, observe the witnesses, and an opportunity to observe the trial in all of its stages, such as an appellate court does not have. For this reason, the inclination of this Court has been to sustain trial courts in cases where they disapprove of verdicts, one reason being that in sustaining such action no rights are permanently settled. This whole question was discussed by this Court in *Ware v. Hays*, 119 W. Va. 585, 195 S. E. 265, where the trial court had set aside a verdict, and this Court felt impelled to reverse its action, reinstate the verdict, and enter judg-

ment thereon. In that case we stated, in general terms, that upon a motion to set aside a verdict, the evidence of the party prevailing therein should be most favorably considered, and doubts arising from conflicting testimony should be resolved in his favor, and that: "Where a case involving conflicting testimony and circumstances has been fairly tried, under proper instructions, the verdict of the jury will not be set aside unless plainly contrary to the weight of the evidence, or without any evidence to support it." Applying this rule to the claimed excessive-ness of the verdict, we are aided by our holding in *Yuncke* v. *Welker*, 128 W. Va. 299, 36 S. E. (2d) 410, wherein we held: "The verdict of a jury in an action for personal injuries will not be set aside as excessive unless it is unsupported by the evidence, or is so large as to indicate that the jury was influenced by passion, partiality, prejudice or corruption, or entertained a mistaken view of the case."

On the whole, we are of the opinion that the evidence in the case sustains the jury verdict of liability against the defendant, and that the verdict returned is not excessive.

Therefore, the judgment of the Circuit Court of Harrison County, entered on the 25th day of April, 1949, setting aside the verdict returned by the jury, and granting a new trial, will be reversed, and this court will reinstate the said verdict and enter judgment thereon in favor of the plaintiff.

> *Judgment reversed;*
> *verdict reinstated;*
> *judgment entered.*