Gerald Frederick LITTLEJOHN and Lorraine Lee Littlejohn, Plaintiffs,

v.

ACF INDUSTRIES CORPORATION, a New York corporation, Defendant.

Civ. A. No. 79–2404.

United States District Court, S.D. West Virginia, Charleston Division.

Dec. 7, 1982.

Phillip D. Gaujot, Cross Lanes, W.Va., for plaintiffs.

Edward W. Rugeley, Jr., Pamela D. Tarr, Charleston, W.Va., for defendant.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

Plaintiff Gerald Littlejohn sued his employer for injuries he sustained while working as a brakeman at the defendant's railroad car repair facility near the town of Red House, West Virginia. At the conclusion of the trial, the jury returned a verdict for plaintiff Gerald Littlejohn in the amount of $600,000. As to plaintiff Lorraine Littlejohn, whose claim was based on loss of consortium, the jury found for the defendant. Her claim is not the subject of this order. The case now comes before the court on defendant's motion for judgment notwithstanding the verdict as to plaintiff Gerald Littlejohn.[1] Inasmuch as the court's ruling on that motion is dispositive of the case, the court will not address defendant's companion motion for new trial.

As plaintiff's employer, defendant's participation in the West Virginia Workmen's Compensation program protected it from negligence actions by employees injured on the job. W.Va.Code § 23–2–6. Employers remain liable, however, for injuries resulting from "deliberate intention" by the employer to produce such injuries. W.Va.Code § 23–4–2. "Deliberate intention," as defined by the West Virginia Supreme Court of Appeals in *Mandolidis v. Elkins Industries, Inc.,* 246 S.E.2d 907 (W.Va.1978),

---

1. Although such a motion was not originally filed by the defendant, the parties have agreed that defendant's motion for new trial may be treated as a motion for judgment notwithstanding the verdict insofar as the motion for new trial is based on the court's failure to grant defendant's motions for a directed verdict made at the close of the plaintiffs' case and at the close of all the evidence. See order of December 1, 1982.

includes "wilful, wanton and reckless misconduct" by the employer. The case at bar was submitted to the jury on the wilful, wanton and reckless misconduct theory.

Defendant's motion asserts that, viewing the evidence in the light most favorable to plaintiff, the plaintiff failed to prove wilful, wanton and reckless misconduct on the part of defendant and, further, that plaintiff was himself guilty of wilful, wanton and reckless misconduct barring recovery.

The evidence showed that plaintiff was hired by defendant on May 7, 1979. He went to work on the afternoon shift at defendant's railroad car repair facility. After approximately a day and a half of orientation and training—the adequacy of which was an issue at trial—the plaintiff assumed what was to be his normal post as a brakeman. He worked a total of nineteen days or shifts until his injury giving rise to this action on June 1, 1979.

Defendant's operations required the moving and shifting of railroad cars from one track to another, into and out of the repair shops, and back and forth between the yard and the main lines. The brakeman's job was to work with the engineer and coordinate all the necessary coupling and uncoupling, braking, and switching maneuvers. The engineer drove the locomotive; the brakeman usually rode at the other end of the string of cars and, via a two-way radio, communicated instructions to the engineer, telling him when to start, when to stop, and how much distance separated the cars to be coupled and uncoupled. The brakeman was also responsible for opening the couplers which joined the cars.

On the day of the accident, June 1, 1979, plaintiff reported for work as usual at 3:30 p.m. Near the end of his shift, Mr. Newman, the foreman, ordered the engineer and the plaintiff shortly after 11:00 p.m. to pick up a car and move it nearer the repair shop. After a series of switching maneuvers through which the plaintiff, using a dual-channel radio, successfully directed his engineer, their two-man crew was in position to pick up the standing car. As the five-car train on which plaintiff was riding approached the car to be picked up, plaintiff was aware that both couplers—the one on the end car of the train and the one on the standing car—were closed. It is noted that one of the couplers must be open for the cars to join. Plaintiff testified that he then radioed the engineer to stop. The engineer, called as a witness by plaintiff, testified that he did not hear any command to stop, but that he knew the approximate location of the standing car and was slowing the engine down.

As will be further detailed below, plaintiff then stepped off the car on which he was riding, some 50 feet from the car to be picked up. He walked to that car in order to open its coupler. Couplers are designed to be opened by a pull on a lever beside and below the coupler, although several witnesses testified that couplers often stick and fail to open completely when the lever is pulled. Plaintiff yanked on the lever, but the coupler did not open, so he stuck his right hand into the coupler itself to pull the coupler knuckle open. As he did so, the cars came together and the couplers closed on his hand. Plaintiff's cries for help brought assistance from his fellow workers, and the cars were soon separated, freeing plaintiff's hand. Despite this prompt aid and an immediate trip to the hospital, plaintiff's hand was damaged so severely that it required amputation.

In essence, plaintiff's claim of wilful, wanton and reckless misconduct is grounded on two practices of the defendant at its car repair facility. First, the plaintiff was instructed, in keeping with the defendant's common practice, that it was appropriate to open and close couplers by hand. Plaintiff was, however, admittedly informed that he was to stay away from cars when they were moving together, especially the couplers. Second, the plaintiff was not instructed to await an acknowledgement of his radio command to the engineer before assuming that his command had been received. This, too, was in keeping with defendant's usual practice in that such acknowledgement procedures were not observed at its repair facility.

In connection with these practices, the plaintiff's evidence showed that he had been furnished a single-frequency radio for contact with the engineer. His radio from time to time did not function properly, in which event he was supplied with a two-channel radio, one channel of which was used for communications in the yard to and from the foremen and the other of which was for use between plaintiff and his engineer. Because of a garbled signal on his radio on the day of the accident, he was given a two-channel radio. A toggle switch on the two-channel radio was used to move from one channel to the other. When using the twin-channel radio, plaintiff on some occasions would switch the radio to the foremen's channel inadvertently and, on others, speak to someone on the foremen's frequency and then fail to switch back when undertaking to communicate with his engineer, whereupon he would be directed by someone on the foremen's channel to switch back to the proper channel. On one such occasion prior to the day of the accident, plaintiff had given a stop command to the engineer on the wrong channel. The command was heard not by the engineer but by the foreman who directed plaintiff to the proper channel.

Plaintiff also offered proof that the lighting in the repair yard was insufficient and that his gloves and flashlight were inadequate, none of which, however, appear to have played any significant part in bringing about the injuries sustained by the plaintiff. Although dimly lit, the yard area where the accident occurred was sufficiently illuminated by the diffused lighting emanating from the repair shop for plaintiff to see to walk along the tracks and around the cars.[2]

As already observed, "deliberate intention" for purposes of this case has been defined by the West Virginia Supreme Court of Appeals to include wilful, wanton and reckless misconduct. *Mandolidis,* 246 S.E.2d at 914. The Court elaborated on its holding as follows:

**2.** See also the Report of C.W. Ferris, Section on Lighting, page 5, 1st par., Plaintiffs' Exh. No. 25.

While wilful, wanton, and reckless misconduct are well-established concepts, we wish to make clear that we are using the words, "wilful," "wanton," and "reckless" misconduct synonymously, and that the conduct removing the immunity bar must be undertaken with a knowledge and an appreciation of the high degree of risk of physical harm to another created thereby. *See* Restatement (Second) of Torts § 500, Comment a at 587–88 (1965).[10]

*Id.* Footnote 10 states:

10. Proof of the subjective realization of the risk may and must generally be proved by circumstantial evidence. For example, the defendant's knowledge of the existence and contents of federal and state safety laws and regulations is competent evidence. Prior deaths or injuries as a result of the risk would certainly be relevant.

■ In its motion for a judgment notwithstanding the verdict, defendant contends that the evidence failed to prove that defendant's misconduct, if any, was wilful, wanton or reckless or was undertaken with the required knowledge and appreciation of the high degree of risk of physical harm created thereby. Defendant also insists that plaintiff was himself guilty of wilful, wanton and reckless misconduct proximately contributing to plaintiff's injury. Defendant therefore contends that the court erred in failing to grant defendant's motion for a directed verdict at the close of plaintiffs' case, and in failing to direct a verdict at the close of all the evidence. The issue presented is whether the evidence, taken in the light most favorable to plaintiff, creates an issue of fact. The standard to be applied is not "whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict . . . ." *Gunning v. Cooley,* 281 U.S. 90, 94, 50 S.Ct. 231, 233, 74 L.Ed. 720 (1930); *Ralston Purina Company v. Edmunds,* 241 F.2d 164, 167 (4th Cir.1957). The standard is the same whether the question arises

under a motion for a directed verdict or under a motion for judgment notwithstanding the verdict. *Yazzie v. Sullivent,* 561 F.2d 183 (10th Cir.1977), citing 9 Wright & Miller, *Federal Practice & Procedure* § 2524 (1971).

An essential ingredient of wilful, wanton and reckless misconduct under *Mandolidis* is that the perpetrator have both knowledge and an appreciation of the high degree of risk that his conduct will, by a strong probability, produce injury. The misconduct attributed to the defendant by the evidence in this case, viewed in the light most favorable to the plaintiff, shows nothing more than negligence.

Reviewing the plaintiff's evidence at the scene in greater detail, two versions appear. The plaintiff testified that, as his crew approached the railcar to be coupled and hauled to the repair shop, plaintiff used his dual-channel radio to direct the engineer to stop. Plaintiff then felt the brakes being applied by the engineer. The plaintiff further testified that the train stopped approximately fifty feet from the standing car as he stepped off the car on which he had been riding. Having noticed that the train was not moving, plaintiff walked unhurriedly to the car to be picked up. He attempted to operate the uncoupling lever on the standing car so that the coupler knuckle would open, enabling the standing car to connect with the cars which the engine was already hauling. For perhaps twenty seconds plaintiff attempted to open the knuckle, initially by pulling the lever and then by both pulling the lever with his left hand and grabbing the knuckle with his right. On his fourth attempt to open the knuckle, the engine and its attached cars closed on him without warning, trapping his hand as the railcars coupled. The plaintiff further testified that it was both a clear night and a relatively quiet night. At the time of the accident, the shift was nearing an end, the men had about finished their work so that there was very little work going on inside the repair shop and, although there was noise, very little machinery was in operation and there was "not anything loud."

Nevertheless, plaintiff also testified that he did not hear the train approaching upon him although he normally would hear the squeaking and creaking of the cars while rolling.

Plaintiff also offered the engineer's substantially different version of the events leading to his injury. The engineer testified that as he and plaintiff were approaching the standing car, he heard no command from plaintiff to stop. He also testified that plaintiff had given him a radio communication to "come back" during the switching maneuver immediately prior to their movement toward the standing car. The engineer further testified that he knew about where the car to be picked up was located and he was slowing the engine down, almost to a complete stop, when the cars coupled.

If the plaintiff's personal version is accepted, the plaintiff gave a signal to stop, using the dual-channel radio. Whether the radio was fully operational and the signal to stop received, or whether the radio had, as plaintiff intimated, somehow been switched to the wrong channel, the train stopped. If plaintiff's testimony is correct, the defendant can hardly be charged with failure to anticipate that the engineer would hold the train stationary as the plaintiff walked unhurriedly to the other car and, while the plaintiff for some twenty seconds repeatedly operated the uncoupling lever, start up again without command from the plaintiff and, without warning or noise from the moving cars, crush the plaintiff's hand between the couplers. On the other hand, if the engineer's version of the accident is credited—and it seems far more likely—the plaintiff must have left the train while it was moving in an effort to open the coupler on the standing car without first stopping the engine. Even assuming that plaintiff did undertake to use his dual-channel radio, albeit on the wrong channel, to direct the engineer to stop, the engineer's version is clear that the train did not stop. Thus, the plaintiff, in placing himself and particularly his hand between the standing car and the moving train, violated the defendant's spe-

cific instructions to him that he was to stay away from cars when they were moving together, especially the coupler itself. Under the engineer's version, the plaintiff acted in disregard for his own safety and was plainly guilty of wilful, wanton and reckless misconduct proximately causing his injury.

Plaintiff's case against the defendant rises no higher than one of negligence. Proof of knowledge and appreciation of the high degree of risk of physical harm to plaintiff on the part of the defendant is lacking. The defendant was not put on notice of the likelihood of injury to one such as plaintiff by virtue of a previous accident of similar kind. The defendant was never cited for a violation of any safety standard respecting the procedures observed at its facility for either the coupling or uncoupling of cars or the transmittal of radio communications. Nor did the defendant receive complaints from any source with regard to those procedures. Whatever the cause of the events which culminated in the tragic loss of plaintiff's hand, it was not proximately caused by a hazard for which the defendant is not only responsible but of which the defendant had the requisite knowledge and appreciation of high degree of risk that would suffice to apprise the defendant that a strong probability of injury to plaintiff ·existed. The defendant's coupling and radio communication procedures had been followed at its plant for many years without evidence at trial of injury, complaint or untoward incident prior to plaintiff's unfortunate accident. *See Smith v. ACF Industries, Inc.,* 687 F.2d 40 (4th Cir.1982).

It is apparent that the defendant through its employees was aware that plaintiff had on occasion managed to have his radio switched to the wrong channel. The defendant may have been negligent in not seeing that acknowledgement of radio commands by switching crews were routinely required in view of defendant's awareness that plaintiff, at least, was sometimes tuned to the wrong channel. Even so, the defendant was not chargeable with knowledge aforehand that one such as the plaintiff would not only act on the assumption that his verbally unacknowledged command

had been received by his engineer but also would for any reason fail to comply with the defendant's instruction that he stay away from railcars when they were moving together, including specifically the couplers.

The defendant's motion is hereby ORDERED granted, the jury verdict and the judgment order of January 6, 1982, entered thereon are hereby ORDERED set aside and vacated as to plaintiff Gerald Littlejohn, and judgment shall be entered in favor of the defendant and against the plaintiff Gerald Littlejohn.