331 S.E.2d 807

**Nelson T. KANE**

v.

**CORNING GLASS WORKS, a corp.**

**No. 16078.**

Supreme Court of Appeals of
West Virginia.

Oct. 17, 1984.

Rehearing Denied Dec. 21, 1984.

Dissenting Opinion Feb. 13, 1985.

Douglas S. Rockwell, Avey, Steptoe, Perry, Van Metre & Rockwell, Charles Town, for appellee.

Lacy I. Rice, Jr., Rice, Hannis & Douglas, Martinsburg, for appellant.

MILLER, Justice:

■ This case involves an industrial accident where Corning Glass Works contends that there was insufficient proof to show a deliberate intent to injure Nelson Kane, one of its employees, under W.Va.Code, 23–4–2, of our Workers' Compensation Act.[1] Consequently, Corning maintains that the Circuit Court of Berkeley County erred in refusing its motion for a directed verdict.

Mr. Kane was awarded $40,000 by a jury for injuries received while operating a forklift in the course of his employment. His injuries occurred when the safety shield or canopy over the driver's seat detached, striking him on the head and back. This overhead canopy was attached to the front of the operator's cab, which was located behind the two lifting booms or masts of the forklift. Connected to the front of the masts was the lift assembly, which could be moved up or down.

Prior to October, 1977, Corning had modified the safety canopy by installing a met-. al bar between the two metal poles that held the canopy and by welding an additional metal screen on the anchoring poles. These modifications were made to provide additional protection to the operator.

In October, 1977, the booms on the forklift were removed and shorter booms were installed. This change decreased the height to which loads could be lifted. The foregoing facts do not appear to be disputed by the parties.

What is disputed is how the canopy came off. The plaintiff's evidence was that on February 21, 1978, he was operating the forklift, lifting a load of discarded pipe and angle iron. In order to keep the load on the lift, he had tilted the booms back toward the cab and was elevating the lift platform to avoid some material on the floor. In the course of lifting the platform, the masts or booms which telescope out caught the edge of the safety canopy and pulled its anchoring pipes out of their securing brackets. This caused the canopy to become detached and fall on the plaintiff.

Corning's view was that the canopy's anchoring pipes some how had been bent forward over the booms so that when the booms were extended, they caught the canopy, pushing it up until the canopy anchoring pipes pulled out of their brackets. No one witnessed the accident except Mr. Kane.

The other disputed fact was whether Corning knew or had reason to know that the canopy could become disengaged. One of the plaintiff's fellow employees, Homer Kitchen, testified that some two weeks prior to the accident, a similar event occurred to him on the same forklift. Mr. Kitchen, however, saw the canopy start to lift and was able to stop the upward movement of the booms so that the canopy did not completely disengage. He claimed that he reported this condition to Harold Markle, who was a maintenance supervisor. However, Mr. Markle denied this and stated that he had never received any complaint about the canopy problem on this forklift from any of the employees.

■ This case is analogous to *Cline v. Joy Mfg. Co.*, 172 W.Va. 769, 310 S.E.2d 835 (1983), where we formulated this rule in its single Syllabus:

"Under *Mandolidis v. Elkins Industries, Inc.*, [161 W.Va. 695], 246 S.E.2d 907 [96 A.L.R.3d 1035] (1978), it is essential, in order for an injured employee to recover, that the employer's misconduct

---

1. The applicable portion of W.Va.Code, 23–4–2, is: ·

"If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have cause of action against the employer, as if this chap-

ter had not been enacted, for any excess of damages over the amount received or receivable under this chapter."

In the 1983 Legislative Session, W.Va.Code, 23–4–2, was amended. The above-cited statute was in effect at the time of the plaintiff's injury and, therefore, it governs this case. *See Lancaster v. State Compensation Comm'r.*, 125 W.Va. 190, 23 S.E.2d 601 (1942); *see also Cline v. Joy*

must be of an intentional or wilful, wanton and reckless character, that the employer must have knowledge and appreciation of the high degree of risk of physical harm to another created by such misconduct, and, of course, that the employer's action must be the proximate cause of the injury."

*Cline* involved an injury in a coal mine occasioned by a defective lever on a continuous miner. The operator of the continuous miner was a section foreman who was standing outside the control cab operating a control lever, which moved the machine. He was injured when the lever stuck, causing the machine to pin him against the rib of the mine. The operator claimed that he had been told by a supervisor to protect this equipment, and it was for this reason that he was operating it. The regular operator had left the machine when he encountered water in the mine. It was not disputed that the defective lever had been reported to the employer on at least two occasions prior to the accident. We concluded that there was insufficient evidence to meet the *Mandolidis* standard.

In *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907, 96 A.L.R.3d 1035 (1978), an employee lost a part of his fingers and hand while operating a mechanically powered table saw. The saw's original safety shield had been removed by the employer because it slowed production. It was established that operating the saw without the safety shield was a violation of both federal and state safety regulations.

A federal safety inspector had ordered the employees not to use the machine until the safety shield was replaced and tagged the machine as being inoperable. The employer removed the tags and ordered that it be placed back into operation. There was a

history of previous injuries to persons operating the power saw without the safety shield. Moreover, one employee had been fired because he refused to operate the power saw without the safety shield. Finally, when the injured employee in *Mandolidis* protested the unsafe condition, he was advised that if he did not operate it, he would be fired.

 In the present case, we find no such compelling state of facts. There was no evidence that the forklift was found to violate any safety standards. Nor can it be said that the condition of the forklift canopy constituted such a dangerous condition that the employer was guilty of a wilful or wanton act in continuing it in operation. In order to reach this conclusion, it would have to be established that the arrangement of the forklift canopy constituted an obviously hazardous condition brought about by the intentional or wilful and wanton act of Corning, and that it was apparent that Corning must have known of the high degree of risk of physical harm by permitting the forklift to be operated. The defective condition was neither obvious nor had there been any past injury arising from it. In short, while there may have been a design defect in the arrangement of the canopy, this does not prove that the employer had a deliberate intent to injure as required by *Mandolidis* and *Cline*.[2]

We, therefore, conclude that the Circuit Court of Berkeley County erred in refusing to grant Corning Glass Works a directed verdict on liability, and we remand the case with directions to enter such a verdict.

Remanded.

McGRAW, J., dissents and files a dissenting opinion.

---

Mfg. Co., 172 W.Va. 769, 310 S.E.2d 835, 837 n. 4 (1983).

**2.** The federal courts have dealt with the *Mandolidis* standard in several cases and have in each instance found that as a matter of law, the facts did not warrant a submission of the case to the jury. *Marshall v. Sisters of Pallotine Missionary Society*, 703 F.2d 92 (4th Cir.1983) (employee fell on hazardous floor as a result of defect in waste disposal machine); *Smith v. ACF Industries Corp.*, 687 F.2d 40 (4th Cir.1982) (employee

injured by moving machine with inadequate safeguards); *Estep v. Chemetals Corp.*, 580 F.Supp. 254 (N.D.W.Va.1984) (employee burned when hot flux pots exploded); *Nedley v. Consolidation Coal Co.*, 578 F.Supp. 1528 (N.D.W.Va. 1984) (employee injured trying to escape shed when coal cars derailed); *Littlejohn v. ACF Industries Corp.*, 556 F.Supp. 70 (S.D.W.Va.1982) (employee injured by train coupling); *Belcher v. J.H. Fletcher & Co.*, 498 F.Supp. 629 (S.D.W.Va. 1980) (roofbolter injured by defective bolting machine).

McGRAW, Justice, dissenting:

I respectfully dissent from the majority's failure to apply the appropriate standard regarding motions for a directed verdict and from its misapplication of the appropriate standards set forth in Syllabus Point 1 of *Mandolidis v. Elkins Industries, Inc.,* 161 W.Va. 695, 246 S.E.2d 907 (1978) and in the single Syllabus of *Cline v. Joy Mfg. Co.,* 172 W.Va. 769, 310 S.E.2d 835 (1983).

In Syllabus Point 5 of *Wager v. Sine,* 157 W.Va. 391, 201 S.E.2d 260 (1973), this Court stated the general rule that, "Upon a motion for a directed verdict, all reasonable doubts and inferences should be resolved in favor of the party against whom the verdict is asked to be directed." *See also* Syl. pt. 3, *Robertson v. LeMaster,* 171 W.Va. 607, 301 S.E.2d 563 (1983); Syl. pt. 1, *Jimco Supply Co. v. Neal,* 166 W.Va. 794, 277 S.E.2d 626 (1981); Syl. pt. 2, *Ashland Oil, Inc. v. Donahue,* 164 W.Va. 409, 264 S.E.2d 466 (1980). This is a condensation of the long established rule in this jurisdiction that, "Upon a motion to direct a verdict for the defendant, every reasonable and legitimate inference fairly arising from the testimony, when considered in its entirety, must be indulged in favorably to plaintiff; and the court must assume as true those facts which the jury may properly find under the evidence." Syl., *Nichols v. Raleigh-Wyoming Coal Co.,* 112 W.Va. 85, 163 S.E. 767 (1932); *see also* Syl. pt. 9, *Casto v. Martin,* 159 W.Va. 761, 230 S.E.2d 722 (1976); Syl., *Curry v. Heck's Inc.,* 157 W.Va. 719, 203 S.E.2d 696 (1974); Syl. pt. 5, *Young v. Ross,* 157 W.Va. 548, 202 S.E.2d 622 (1974); Syl. pt. 1, *Pinfold v. Hendricks,* 155 W.Va. 489, 184 S.E.2d 731 (1971); Syl. pt. 5, *Smith v. Edward M. Rude Carrier Corp.,* 151 W.Va. 322, 151 S.E.2d 738 (1966); Syl. pt. 1, *Duling v. Bluefield Sanitarium, Inc.,* 149 W.Va. 567, 142 S.E.2d 754 (1965); Syl. pt. 4, *Thornsbury v. Thornsbury,* 147 W.Va. 771, 131 S.E.2d 713 (1963); Syl. pt. 1, *Lambert v. Goodman,* 147 W.Va. 513, 129 S.E.2d 138 (1963); Syl. pt. 1, *Spaur v. Hayes,* 147 W.Va. 168, 126 S.E.2d 187 (1962); Syl. pt. 5, *Reilley v. Byard,* 146 W.Va. 292, 119 S.E.2d 650 (1961); Syl. pt. 3, *Costello v. City of Wheeling,* 145 W.Va. 455, 117 S.E.2d 513 (1960); Syl. pt. 1, *Jenkins v. Chatterton,* 143 W.Va. 250, 100 S.E.2d 808 (1957); Syl. pt. 1, *Reese v. Lowry,* 140 W.Va. 772, 86 S.E.2d 381 (1955), *overruled on other grounds, Bradley v. Appalachian Power Co.,* 163 W.Va. 332, 256 S.E.2d 879 (1979); Syl. pt. 1, *Roush v. Johnson,* 139 W.Va. 607, 80 S.E.2d 857 (1954); Syl. pt. 4, *Montgomery v. Fay,* 139 W.Va. 273, 80 S.E.2d 103 (1954); Syl. pt. 1, *Homes v. Monongahela Power Co.,* 136 W.Va. 877, 69 S.E.2d 131 (1952); Syl., *Hammersmith v. Bussey,* 136 W.Va. 437, 67 S.E.2d 609 (1954); Syl. pt. 3, *Sammons Bros. Const. Co. v. Elk Creek Coal Co.,* 135 W.Va. 656, 65 S.E.2d 94 (1951); Syl. pt. 1, *Frampton v. Consolidated Bus Lines,* 134 W.Va. 815, 62 S.E.2d 126 (1950); Syl, *Perry v. Scott,* 134 W.Va. 380, 59 S.E.2d 652 (1950); Syl., *Raeder v. Sconish,* 133 W.Va. 795, 58 S.E.2d 265 (1950); Syl. pt. 1, *Konopka v. Montgomery Ward & Co.,* 133 W.Va. 775, 58 S.E.2d 128 (1950); Syl. pt. 1, *Laphew v. Consolidated Bus Lines,* 133 W.Va. 291, 55 S.E.2d 881 (1949); Syl. pt. 1, *Stokey v. Norfolk & Western Ry. Co.,* 132 W.Va. 771, 55 S.E.2d 102 (1949); Syl. pt. 1, *Parsons v. New York Cent. R. Co.,* 127 W.Va. 619, 34 S.E.2d 334 (1945); Syl. pt. 1, *Boyce v. Black,* 123 W.Va. 234, 15 S.E.2d 588 (1941); Syl. pt. 1, *Fielder v. Service Cab Co.,* 122 W.Va. 522, 11 S.E.2d 115 (1940); Syl. pt. 1, *Burgess v. Sanitary Meat Market,* 121 W.Va. 605, 5 S.E.2d 785 (1940); Syl. pt. 2, *Hambrick v. Spalding,* 116 W.Va. 235, 179 S.E. 807 (1935); Syl. pt. 4, *Jameson v. Norfolk & Western Ry. Co.,* 97 W.Va. 119, 124 S.E. 491 (1924); Syl. pt. 3, *Estep v. Price,* 93 W.Va. 81, 115 S.E. 861 (1923); Syl. pt. 2, *Potts v. Union Traction Co.,* 75 W.Va. 212, 83 S.E. 918 (1914). Rather than resolving all reasonable doubts and inferences in favor of the plaintiffs as mandated by this well established rule, however, the majority employs an implicit preponderance of the evidence test, substituting its view of the evidence for that of the jury and the trial court.

Related to the rule that all reasonable doubts and inferences are to be resolved in favor of the party against whom the verdict is asked to be directed is the proposition that, "It is the peculiar and exclusive

province of the jury to weigh the evidence and resolve questions of fact when the testimony of witnesses regarding them is in conflict; and the finding of the jury on such facts will not be disturbed by this Court." Syl. pt. 4, *Davis v. Sargent*, 138 W.Va. 861, 78 S.E.2d 217 (1953); *see also* Syl. pt. 2, *Blamble v. Harsh*, 163 W.Va. 733, 260 S.E.2d 273 (1979); Syl. pt. 2, *Bourne v. Mooney*, 163 W.Va. 144, 254 S.E.2d 819 (1979); Syl. pt. 3, *Long v. City of Weirton*, 158 W.Va. 741, 214 S.E.2d 832 (1975); Syl. pt. 3, *Hall v. Nello Teer Co.*, 157 W.Va. 582, 203 S.E.2d 145 (1974); Syl. pt. 4, *Young v. Ross, supra;* Syl. pt. 3, *Wager v. Sine, supra;* Syl. pt. 3, *Willey v. Travelers Indem. Co.*, 156 W.Va. 398, 193 S.E.2d 555 (1972); Syl. pt. 2, *Kidd v. Norfolk & Western Ry. Co.*, 156 W.Va. 296, 192 S.E.2d 890 (1972), *overruled on other grounds, Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979); Syl. pt. 2, *Skeen v. C & G Corp.*, 155 W.Va. 547, 185 S.E.2d 493 (1971); Syl. pt. 3, *Western Auto Supply Co. v. Dillard*, 153 W.Va. 678, 172 S.E.2d 388 (1970); Syl. pt. 4, *Shaeffer v. Burton*, 151 W.Va. 761, 155 S.E.2d 884 (1967); Syl. pt. 2, *Sydenstricker v. Vannoy*, 151 W.Va. 177, 150 S.E.2d 905 (1966); Syl. pt. 1, *Evans v. Farmer*, 148 W.Va. 142, 133 S.E.2d 710 (1963); Syl. pt. 2, *Graham v. Crist*, 146 W.Va. 156, 118 S.E.2d 640 (1961); Syl. pt. 2, *Overton v. Fields*, 145 W.Va. 797, 117 S.E.2d 598 (1960); Syl. pt. 5, *Lewis v. Mosorjak*, 143 W.Va. 648, 104 S.E.2d 294 (1958). Accordingly, this Court had consistently held that, "Where the evidence is conflicting and the case is fairly tried under proper instructions the jury verdict will not be set aside unless it is plainly contrary to the weight of evidence or is without any evidence to support it." *Bourne v. Mooney*, 163 W.Va. at 148, 254 S.E.2d at 821; *see also* Syl., *Morgan v. Bottome*, 170 W.Va. 23, 289 S.E.2d 469 (1982); Syl. pt. 1, *Elsey Ford Sales, Inc. v. Soloman*, 167 W.Va. 891, 280 S.E.2d 718 (1981); Syl. pt. 2, *Department of Highways v. Delta Concrete Co.*, 165 W.Va. 398, 268 S.E.2d 124 (1980); Syl. pt. 2, *Rhodes v. National Homes Corp.*, 163 W.Va. 669, 263 S.E.2d 84 (1979); Syl. pt. 3, *Blamble v. Harsh, supra;* Syl. pt. 3,

*Bourne v. Mooney, supra;* Syl. pt. 2, *Hopkins v. Grubb*, 160 W.Va. 71, 230 S.E.2d 470 (1977); Syl. pt. 6, *Higginbotham v. City of Charleston*, 157 W.Va. 724, 204 S.E.2d 1 (1974), *overruled on other grounds, O'Neil v. City of Parkersburg*, 160 W.Va. 694, 237 S.E.2d 504 (1977); Syl. pt. 4, *Kidd v. Norfolk & Western Ry. Co., supra;* Syl. pt. 1, *Yeager v. Stevenson*, 155 W.Va. 16, 180 S.E.2d 214 (1971); Syl. pt. 2, *Western Auto Supply Co. v. Dillard, supra;* Syl. pt. 6, *Fortner v. Napier*, 153 W.Va. 143, 168 S.E.2d 737 (1969); Syl. pt. 5, *Shaeffer v. Burton, supra;* Syl., *Speicher v. State Farm Mut. Auto. Ins. Co.*, 151 W.Va. 292, 151 S.E.2d 684 (1966); Syl. pt. 9, *Morgan v. Price*, 151 W.Va. 158, 150 S.E.2d 897 (1966); Syl. pt. 6, *Poe v. Pittman*, 150 W.Va. 179, 144 S.E.2d 671 (1965); Syl. pt. 1, *Levine v. Headlee*, 148 W.Va. 323, 134 S.E.2d 892 (1964); Syl. pt. 2, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, 131 S.E.2d 736 (1963); Syl. pt. 2, *Shaw v. Perfetti*, 147 W.Va. 87, 125 S.E.2d 778 (1962); Syl. pt. 4, *Campbell v. Campbell*, 146 W.Va. 1002, 124 S.E.2d 345 (1962); Syl. pt. 3, *Overton v. Fields*, 145 W.Va. 797, 117 S.E.2d 598 (1960); Syl. pt. 6, *Earl T. Browder, Inc. v. County Court*, 145 W.Va. 696, 116 S.E.2d 867 (1960); Syl. pt. 1, *Moore v. United Ben. Life Ins. Co.*, 145 W.Va. 549, 115 S.E.2d 311 (1960); Syl. pt. 2, *Harless v. Workman*, 145 W.Va. 266, 114 S.E.2d 548 (1960); Syl. pt. 4, *Laslo v. Griffith*, 143 W.Va. 469, 102 S.E.2d 894 (1958); Syl. pt. 6, *Dodrill v. Young*, 143 W.Va. 429, 102 S.E.2d 724 (1958), Syl. pt. 6, *Davis v. Sargent, supra;* Syl. pt. 3, *Morris v. Nelson*, 136 W.Va. 722, 68 S.E.2d 9 (1952); Syl. pt. 1, *Mills v. Miller*, 135 W.Va. 627, 64 S.E.2d 111 (1951); Syl. pt. 2, *Wine v. City Lines of West Virginia*, 134 W.Va. 889, 62 S.E.2d 260 (1951); Syl. pt. 2, *Davis v. Pugh*, 133 W.Va. 569, 57 S.E.2d 9 (1950); Syl. pt. 2, *Yuncke v. Welker*, 128 W.Va. 299, 36 S.E.2d 410 (1946); Syl., *Dangerfield v. Akers*, 127 W.Va. 409, 33 S.E.2d 140 (1945); Syl. pt. 1, *Ware v. Hays*, 119 W.Va. 585, 195 S.E. 265 (1938); Syl. pt. 2, *Stephens v. Bartlett*, 118 W.Va. 421, 191 S.E. 550 (1937); Syl. pt. 1, *Kaufman v. Charleston Transit Co.*, 117 W.Va. 591, 186 S.E. 617 (1936); Syl. pt. 2, *Hohmann v. County*

**82**

*Court,* 109 W.Va. 734, 156 S.E. 86 (1930). The majority in the instant proceeding continues the practice it established in *Cline* of usurping the province of the jury by reevaluating the weight of conflicting evidence without an explicit determination that the jury verdict was either plainly contrary to the weight of the evidence or without any evidence to support it. As was stated in the dissent in *Cline,* 172 W.Va. at 777, 310 S.E.2d at 843, "By ignoring the correct standard of review, the majority substitues its interpretation of the facts, based upon a cold record, for that of both the trial court and the jury."

In addition to its failure to give appropriate deference to the trial court and the jury, the majority also misapplies the standards set forth in *Mandolidis* and *Cline* to the circumstances involved in the present action. The majority concludes that, "[W]hile there may have been a design defect in the arrangement of the canopy, this does not prove a deliberate intent to injure as required by *Mandolidis* and *Cline.*" Although "deliberate intent" to injury may manifest itself in the form of a direct physical assault, both *Mandolidis* and *Cline* recognize that "wilfull, wanton and reckless" conduct on the part of the employer resulting in injury to an employee will support a tort recovery. Syl. pt. 1, *Mandolidis, supra;* Syl., *Cline.* The injured employee in *Mandolidis* was not thrown into the power saw by his employer with a deliberate intent to injure. Nevertheless, this Court held that the employer's maintenance of a hazardous condition in wilfull, wanton, and reckless disregard for the safety of its employees removed the tort action immunity bar granted by the workers' compensation system. 161 W.Va. at 706, 246 S.E.2d at 914. I agree with the majority that the circumstances involved in *Mandolidis* were "compelling." I disagree with the implication that an identical or worse set of circumstances is essential to recover under the wilfull, wanton, and reckless misconduct standard.

The brief recitation of the circumstances involved in the instant action by the majority is incongruous with the complexity of the evidence presented at trial. For example, the majority fails to mention that the forklift involved was actually a combination of two different thirteen year old forklifts, one a two-stage forklift and the other a three-stage forklift. What the majority characterizes as the installation of "shorter booms" on one of the forklifts was actually the transfer of a two-stage boom to a three-stage machine. Evidence introduced by the plaintiff indicated that this modification to the forklift was performed by the employer in wilfull, wanton, and reckless disregard for the safety of the employees operating this machine. Specifically, the plaintiff's evidence indicated that the substantial decrease in the height to which loads could be lifted with a two-stage boom on a three-stage machine mandated that the forks be tilted severely in order to raise the material to be transported to a sufficient height which in turn resulted in a significant likelihood that the boom could catch the expanded metal hanging near the boom raising the safety canopy poles out of their brackets causing the canopy to crash on the driver. The plaintiff presented evidence through testimony of a fellow employee that the employer's modification of the forklift had nearly resulted in similar injury two weeks prior to the plaintiff's accident. This employee also testified that he had reported this condition to a maintenance supervisor, although the majority implicitly discounts his testimony in favor of the supervisor, who denied receiving any complaints concerning the forklift. The trial court, under the appropriate standard, considered this and other conflicting evidence presented, resolving all reasonable doubts and inferences in favor of the plaintiff, and denied the employer's motion for a directed verdict. The jury weighed the conflicting evidence and concluded that the employer was guilty of wilfull, wanton, and reckless misconduct. I dissent from the majority's invasion of the province of the trial court and jury, particularly where it advances unarmed with the appropriate analytical weapons.