DONALD J. BOLLING, GERRY LEE BOLLING, *an Infant, etc., et al.*

*v.*

CHARLES N. CLAY

(No. 12437)

Submitted September 21, 1965.   Decided November 9, 1965.

*Browning, Judge,* not participating.

*Quinlan, Nelson & Williamson, H. G. Williamson,* for appellants.

*Maxwell W. Flesher, William I. Flesher,* for appellee.

CALHOUN, JUDGE:

As a result of a collision of two automobiles in the city of Huntington on December 23, 1961, Donald J. Bolling and Gerry Lee Bolling, residents of Huntington, instituted a civil action against Charles N. Clay in which both plaintiffs sought to recover damages for personal injuries and medical expenses and in which Donald J. Bolling also sought to recover for damages caused to his automobile by the collision. Lawrence E. Bolling, father of Gerry Lee Bolling, an infant, sued to recover medical bills incurred in connection with personal injuries sustained by the son. Charles N. Clay, the defendant, filed a counterclaim against Donald J. Bolling for damages caused to Clay's automobile by the collision.

Upon the trial of the case, the jury returned the following verdict: "We, the jury, do agree and find that none of the parties in this action are entitled to recover one from the other." The court entered an order, pursuant to the verdict, by which it was adjudged that each of the four parties "take nothing", and that the entire action be dismissed on

its merits. Gerry Lee Bolling prosecutes this appeal from the action of the trial court in overruling his motion to set aside the verdict as it relates to him and to grant him a new trial.

At the time of the collision, Donald J. Bolling was operating an automobile in which his brother, Gerry Lee Bolling, fifteen years of age, was a passenger. The other automobile involved in the collision was being operated by the defendant, Charles N. Clay. On this appeal, the basic contention made in behalf of Gerry Lee Bolling is that the verdict shows on its face that the jury found that both drivers were guilty of negligence, which caused the jury to deny recovery of damages to each of them; that, therefore, it follows that the two drivers were guilty of concurrent negligence which would entitle the infant plaintiff to maintain an action against either or both of them; that the record discloses that the infant plaintiff was not guilty of any negligence which contributed proximately to cause the collision; and that, therefore, the verdict should be set aside to the extent that it denied recovery to him and that he should be granted a new trial.

Counsel for the defendant strenuously assert that the verdict, pursuant to instructions given by the court, discloses a jury finding that neither driver was guilty of actionable negligence and that, in this sense, the personal injuries which the infant plaintiff sustained were caused by an "unavoidable accident."

The collision occurred at the point where Sixteenth Street and Fifth Avenue intersect at right angles. Each of the two streets has four traffic lanes. Traffic was permitted to proceed both north and south on Sixteenth Street. Traffic on Fifth Avenue was permitted to proceed from west to east. Overhead at the intersection there was a four-phase traffic light at the time of the collision. Before the collision, the Bolling automobile was proceeding northward and the defendant's automobile was proceeding southward on Sixteenth Street. Immediately ahead of the defendant's automobile on Sixteenth Street was an automobile, proceeding

southward, which turned to its left at the intersection, across the traffic lane in which the Bolling automobile was traveling and eastward into Fifth Avenue. The identity of the driver of that automobile is unknown. The defendant's automobile likewise turned to its left at the intersection, into the path of the Bolling automobile, in an effort to proceed eastward into Fifth Avenue. In these circumstances, the collision here in question resulted. While the exact point of impact is not made clear by the testimony, it appears to be undisputed that the collision occurred within the intersection.

The jury was adequately instructed in relation to primary negligence, contributory negligence, proximate cause and credibility of witnesses. The jury was also instructed that negligence of Donald J. Bolling in the operation of his automobile could not be imputed to Gerry Lee Bolling merely because the latter was a passenger in that automobile; and that Gerry Lee Bolling, if he was not negligent, might properly recover damages from the defendant even if it appeared that his brother, in the operation of his automobile, was guilty of negligence which proximately contributed to cause the accident. The court also gave and read to the jury defendant's instruction number 12 as follows: "The Court instructs the jury that the law recognizes that accidents may occur without negligence on the part of any party involved, and that persons may receive injuries as a result thereof. Such accidents are known as unavoidable accidents. If you believe from the evidence that the alleged injuries occurred as a result of an unavoidable accident, that is, without negligence on the part of Charles N. Clay, then you should find your verdict in favor of the defendant." No specific objection was made to the granting of the instruction, as required by R. C. P. 51, except that the giving of it was not warranted by the evidence.

The accident occurred about 7:30 p. m. It was then dark, it was raining and the streets in the area were wet.

Certain ordinances of the City of Huntington concerning regulation of vehicular traffic were put in evidence. One

of these was as follows: "Obedience to official traffic-control devices. The driver of any vehicle shall obey the instructions of any official traffic-control device applicable thereto placed in accordance with the provisions of this ordinance, unless otherwise directed by à traffic or police officer, subject to the exceptions granted the driver of an authorized emergency vehicle in this ordinance."

Construed in relation to the matters involved on this appeal, the effect of the verdict is a jury finding against Gerry Lee Bolling, plaintiff, and in favor of Charles N. Clay, the defendant. In considering whether the trial court improperly refused to set aside the verdict as it related to Gerry Lee Bolling and to grant him a new trial, every reasonable and legitimate inference fairly arising from the evidence in favor of the defendant must be considered, and the Court must accept as true all facts, favorable to the defendant, which the jury might properly have found from the evidence. *Poe v. Pittman et al.*, 150 W. Va. 179, pt. 5 syl., 144 S. E. 2d 671, *Walker v. Monongahela Power Co.*, 147 W. Va. 825, pt. 3 syl., 131 S. E. 2d 736. In this connection we bear in mind that each of the three parties to the action was undertaking to recover damages sustained as a consequence of the accident; that the jury was fully instructed concerning the rights of each party in that respect; and that the jury found that none of the parties was entitled to recover damages. In reviewing the evidence, therefore, we must construe it in the light of all facts favorable to the defendant which the jury might properly have found from the evidence.

The three parties to the action and two municipal police officers were the only witnesses whose testimony was adduced to show the cause or causes of the collision.

Gerry Lee Bolling, the infant plaintiff, testified that immediately before the collision, the automobile in which he was a passenger was proceeding northward on Sixteenth Street in the lane next to the center of the street; that, as the Bolling automobile was about to enter the intersection, the light on the overhead traffic signalling device was green;

that the third automobile, the identity of the driver of which is unknown, then proceeding from the opposite direction, or southward, on Sixteenth Street, turned to its left into the intersection, across the traffic lane in which the Bolling automobile was proceeding and eastward into Fifth Avenue; that the defendant's automobile, following the course of the third automobile, turned left into the intersection at the same time the Bolling automobile entered the intersection; and that the collision resulted.

Donald J. Bolling testified that, as he approached the intersection, the light overhead was green, indicating that it was proper for him to proceed; that the light had changed to green when he was 8 or 10 feet from the intersection, traveling about 20 or 25 miles an hour; that the third automobile and the defendant's automobile were in different traffic lanes and turned to the left into the intersection about the same time, the defendant's automobile being in the traffic lane next to the center of the street; that the third automobile crossed the intersection and entered Fifth Avenue; that the defendant's automobile crossed the path of the Bolling automobile; and that thereby the collision resulted. The witness testified that he entered the intersection when the traffic light was green in his direction, in its "third phase", and he implied that when the light was in this third phase, vehicles approaching from the opposite direction were not permitted by the traffic light to turn left into and across the intersection. He stated that he saw the third automobile and the defendant's automobile in a standing position near the intersection before they turned to the left into the intersection. He stated that the two automobiles were standing near the intersection while their drivers were waiting for the traffic light to signal by a green arrow that it would be proper for them to turn to their left.

The defendant testified that he was a sergeant in the United States Air Force; that he had been in the service fourteen years; that he was stationed in Montana and that at the time of the accident he was visiting his parents at Milton, West Virginia; that, in proceeding southward on Sixteenth Street and approaching the intersection, he was

traveling in the traffic lane next to the center of the street; that, when he arrived at the intersection, the third car was standing ahead of him in the same traffic lane, with its signal lights indicating a purpose to make a left turn; that the overhead traffic signal light was red; that he stopped his automobile a short distance behind the third automobile in the same traffic lane and indicated by his signal lights his intention to make a left turn; that the overhead traffic signal device changed from red to include a green arrow pointing to the left; that the third automobile thereupon turned to its left, across the intersection and into Fifth Avenue; that he proceeded to follow the third automobile to the left; that as he turned he noticed the Bolling automobile headed northward on the opposite side of Sixteenth Street, in the traffic lane next to the curb; that the Bolling vehicle "was stopped at the light apparently hesitating;" that he assumed the right of way was as the arrows indicated and, therefore, he continued to follow the third automobile; that his automobile was struck by the Bolling automobile in the area of the right front wheel and fender; that he was in the intersection when he first saw the Bolling car moving; that, as he entered the intersection, "the light had a green arrow to the left and straight ahead"; that he entered the intersection at a speed of about 5 to 10 miles an hour and he was proceeding at a speed of not more than 10 miles an hour when the collision occurred; and that he entered the intersection about 1 1/2 car lengths behind the automobile which was preceding him. On cross-examination, the defendant, referring to the Bolling automobile immediately before it entered the intersection, stated: "I believe his car hesitated there, yes." In other words, he appeared not to be certain that the Bolling automobile completely stopped at that point. He testified that immediately following the collision, he told the investigating officer that the traffic light was confusing to him since the arrows indicated that it was proper for him to proceed straight ahead or to make a left turn. In that connection he testified: "And this was common in previous cities and everywhere I have traveled. The traffic is stopped on the other side."

It is undisputed that the overhead traffic signalling device at this intersection was replaced by one of a different type between the date of the collision and the date of the trial.

John Earls and Carl Blevins, members of the police force of the City of Huntington, were called to the scene of the collision soon after it occurred. Earls testified: "Mr. Clay was from out of town. He was an out of town driver, sir. He had Texas registration plates on his car. Mr. Clay stated that he was a foreigner in our city and that he did not understand the lights, the traffic lights." Officer Earls testified that he did not recall the nature or various phases of the traffic signal device which was overhead at the intersection at the time of the accident.

Carl Blevins, city policeman, testified that the defendant told him at the scene that he was not familiar with the traffic lights in Huntington. He testified that, at the time of the accident here in question, the overhead traffic signal device had a certain phase, perhaps the fourth phase, which permitted traffic to proceed both north and south on Sixteenth Street and which, at the same time, permitted traffic proceeding southward on Sixteenth Street to turn to the left across the intersection and into Fifth Avenue. He added: "When you made a turn you made it at your own risk." The witness testified that, before the light changed to the phase described immediately above, a red light would have forbidden a left turn at the intersection by vehicles traveling southward.

It appears, therefore, that there was no contradiction of the testimony of the two Bollings that the traffic light facing them was green when their automobile entered the intersection; and that there was no contradiction of the defendant's testimony that a green arrow pointing to his left indicated the propriety of his turning to his left into and across the intersection. The testimony of Carl Blevins, the city policeman, tends strongly to sustain the truth of the testimony of each of the three parties in this respect; that is, Blevins testified that the traffic light, in one of its phases,

displayed a green light which would face the Bolling automobile and, at the same time, a green arrow facing the defendant and pointing to his left. That the traffic light was in this phase at the time of the collision is supported, in some measure at least, by the testimony of both Donald J. Bolling and the defendant that the defendant's automobile and the vehicle immediately ahead of it had been in a standing position before they entered the intersection and by the testimony of Donald J. Bolling that the traffic light, as it faced him, turned to green immediately before he reached the intersection.

"An owner or operator of a motor vehicle is not an insurer against injuries being caused by its operation but is liable only for negligence, * * * and therefore an injury caused by the motor vehicle without any negligence or wrong on the part of, or attributable to, the owner or operator is regarded as an unavoidable accident, and neither the owner nor the operator is liable therefor; the sole proximate cause of an automobile collision does not necessarily have to be a negligent act." 60 C. J. S., Motor Vehicles, Section 256, page 623. "An unavoidable or inevitable accident is such an occurrence or happening as, under all the attendant circumstances and conditions, could not have been foreseen or anticipated in the exercise of ordinary care as the proximate cause of injury by any of the parties concerned. In other words, where there is no evidence that the operator of the motor vehicle was negligent in any way, or that he could have anticipated the resulting accident, the accident is deemed to have been an unavoidable or inevitable one for which no recovery may be had." 7 Am. Jur. 2d, Automobiles and Highway Traffic, Section 350, page 896. "In accord with the basic principles that liability for negligence is predicated upon fault of the person charged, and that a loss suffered by one person which is not attributable to negligence or misconduct on the part of another is damnum absque injuria, it is recognized that no action will lie for injuries attributable to what is termed inevitable or unavoidable accident, and further that an accident need not be free from human agency in order to be unavoidable."

38 Am. Jur., Negligence, Section 6, page 648. "An unavoidable accident is one which occurs while all persons concerned are exercising ordinary care, that is, one not caused by the fault of any of the persons; if the accident producing the injury could have been prevented by either person by means suggested by common prudence, it is not deemed unavoidable." 65 C. J. S., Negligence, Section 21, page 430. To the same effect see Blashfield's Cyclopedia of Automobile Law and Practice (Perm. Ed.), Volume 1, Section 635, page 483; 1 C. J. S., Actions, Section 15 (7), page 1011; *Hains* v. *Parkersburg, Marietta & Interurban Ry. Co.*, 75 W. Va. 613, 84 S. E. 923; *Mawyer* v. *Thomas,* 199 Va. 897, 901, 103 S. E. 2d 217, 220. "Whether an automobile accident was the result of an unavoidable accident or of negligence ordinarily presents a question of fact for the jury or for determination of the court sitting as a jury." Blashfield's Cyclopedia of Automobile Law and Practice (Perm. Ed.), Volume 10B, Section 6643, page 347.

We are of the opinion that the jury was warranted in determining from the evidence that the injuries to persons and property in this case did not result from lack of due care on the part of either driver and that, in that sense, the injuries resulted from an unavoidable accident. Indeed, there is no other reasonable basis upon which the jury, in the light of the trial court's instruction, could have found that none of the four parties was entitled to recover damages. The jury was amply warranted in finding from the evidence that the traffic light facing Donald J. Bolling was green at the time he proceeded into the intersection; and that, at the same time, the traffic light, as it faced the defendant, displayed a green arrow pointing to his left. There is nothing in the evidence to indicate that either driver knew, or had reasonable basis for knowing, the nature of the signal that was being displayed on the opposite side of the traffic light immediately before the collision. We are of the opinion that, in the circumstances established by clear proof, the jury was warranted in finding that each driver acted as a reasonably prudent person in proceeding into the intersection. This is particularly true as it relates

to the defendant because he testified that he was not familiar with the traffic lights in Huntington and that his past experience caused him to believe that the green arrow indicated the propriety of his turning to his left. For reasons stated, we are of the opinion that the trial court was justified by the evidence in giving the defendant's instruction on the subject of unavoidable accident.

Counsel for Gerry Lee Bolling urge that the trial court erred in giving the defendant's instruction number 10, which is as follows: "The Court instructs the jury that in ascertaining whether a person has been negligent or not, it is proper to consider the circumstances, in which he is placed, so that what might be negligence under some circumstances, might not be so under others, and so that it might be proper, for one to do in view of imminent danger, that which at other times would be considered rash, yet this rule only permits a person to do what persons of ordinary prudence of the same class would have done under like circumstances; therefore, if Charles N. Clay, at the time of the accident, did what ordinarily prudent and careful persons of the same class would have done under similar circumstances, and if such act on his part contributed immediately to the injuries complained of, nevertheless, the plaintiffs cannot recover, and your verdict must be for the defendant, Charles N. Clay." The basis of this assignment of error is that the instruction deals with the sudden emergency doctrine and that it does not require a jury determination that the defendant was free of fault in bringing about the situation which is alleged by him to have been a sudden emergency. See *Poe* v. *Pittman et al.*, 150 W. Va. 179, pt. 2 syl., 144 S. E. 2d 671. We are not called upon to determine whether this assignment of error has merit, because no objection of this character was made, pursuant to the requirement of R. C. P. 51, when the instruction was offered.

For reasons stated in this opinion, the judgment of the Circuit Court of Cabell County is affirmed.

*Affirmed.*