363 S.E.2d 127

**Judy Raylene DREYER**

v.

**WEIRTON STEEL, DIVISION
OF NATIONAL STEEL
CORPORATION.**

**No. 16760.**

Supreme Court of Appeals of
West Virginia.

July 11, 1986.
Dissenting Opinion Dec. 14, 1987.

J.B. Blumenstiel, Columbus, Ohio, Robert L. Bays, Parkersburg, for appellant.

Carl N. Frankovitch, Volk, Robertson, Frankovitch, Anetakis & Hellerstede, Weirton, for appellee.

PER CURIAM:

This is a personal injury action brought in the Circuit Court of Hancock County under the deliberate intent exception in the Workers' Compensation Act, *W.Va.Code* 23–4–2 [1969],[1] and our holding in *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978). The plaintiff, Judy Raylene Dreyer, was awarded damages of $800,000 by the jury. In a final order entered August 20, 1984, the trial court granted defendant's motion for judgment notwithstanding the verdict. On appeal the plaintiff contends that the court erred as a matter of law in setting aside the jury verdict and entering judgment for the defendant.

The plaintiff, Judy Dreyer, was employed as a laborer in the defendant's sinter plant on April 18, 1978, her first day back at work following an extended furlough. The plaintiff's duties as a laborer consisted of sweeping up the dust and debris in an alley outside the sinter plant. As were other

---

1. *W.Va.Code* 23–4–2 was amended in 1983 after the *Mandolidis* decision. The 1969 statute in effect at the time of plaintiff's injury controls this case.

employees in the sinter plant, the plaintiff was issued certain safety equipment: a hard hat, nape protector, respirator and safety glasses.

The plaintiff used a broom, shovel and bucket to perform her duties. Her injury occurred around noon as she prepared to take her lunch break. The plaintiff had placed her bucket of debris on the ground when a gust of wind blew the contents of the bucket into her face. She immediately experienced pain in her eyes and went to the foreman's office to report her eye injury. The foreman completed an accident report and sent the plaintiff to wait for a service car to transport her to the plant dispensary. The plaintiff testified that she waited approximately 20 minutes before the car arrived.

At the dispensary the plaintiff's eyes were first examined by a nurse who could find no foreign objects in either eye but squirted water into both eyes. The plaintiff testified that a doctor examined her eyes several minutes later but also found no foreign objects in either eye. The doctor rinsed the plaintiff's eyes again and applied salve and a patch to the left eye. The plaintiff remained in the dispensary until the end of the day. She was instructed to return to the dispensary the following day when she was examined by Dr. Naymick who found a large ulceration and small speckling in the left eye but no foreign objects. He again applied salve and a patch to the plaintiff's left eye and the plaintiff remained in the dispensary the entire day.

On April 20, two days after the accident, the plaintiff continued to complain of pain and she was referred to Dr. Luthra, an opthamologist. Dr. Luthra found and removed two small foreign bodies from the plaintiff's left eye and removed the epithelium, the surface coating of the cornea, which was loose. Dr. Luthra diagnosed recurrent corneal erosions in both eyes and testified that he saw no chemical damage to either eye when he examined the plaintiff on April 20. The plaintiff was released to return to work in a dust-free environment on April 24. She testified that she worked for approximately three weeks until she had a recurring problem with her left eye.

Since her injury on April 18, 1978, the plaintiff has been treated by numerous physicians for her eye problems. She has been diagnosed as suffering from microcystic corneal dystrophy, a condition that causes extreme pain and makes the epithelium of the eye susceptible to recurrent erosion or peeling. Although this condition causes temporary loss of vision when it occurs and can, in the worst case lead to blindness, there was evidence that the plaintiff's vision is close to normal with the aid of corrective lenses.

The plaintiff maintains that she has suffered permanent damage to her eyes as a result of the defendant's placing her in an area containing alkaline substances and failing to provide her with goggles, failing to instruct her with regard to proper first aid, and failing to provide immediate first aid after she was injured. The plaintiff contends that the defendant's actions, or lack thereof, constituted a wilful, wanton and reckless violation of OSHA standards, federal and state law, industrial standards, company policy and contractual obligations.

In setting aside the jury verdict for the plaintiff and granting the defendant's motion for judgment notwithstanding the verdict, the trial court found:

1) That the evidence submitted at the trial of this matter did not include proof from which the jury could conclude that the conduct of the Defendant/Employer was done with knowledge of a high risk of physical harm to the Plaintiff/Employee being created thereby; and

2) That the evidence submitted at the trial of this matter failed to establish any prior injuries of the nature suffered by the Plaintiff, and on the contrary the uncontradicted evidence submitted by the defendant established that the job performed by the plaintiff had been performed by many employees in the past without incident.

3) That as a matter of law the evidence submitted at the trial of this matter failed to provide evidence from which

the jury could conclude that wilful, wanton, and reckless misconduct on the part of the Employer occurred.

4) That as a matter of law the acts of the Defendant/Employer did not rise from negligence to even gross negligence.

The sole issue in this case is whether there is sufficient evidence to support a finding that the defendant violated the *Mandolidis* standard. If there is, the court erred in setting aside the jury's verdict and entering judgment for the defendant. We recognize that because of the favorable jury verdict, the facts are to be construed in the light most favorable to the plaintiff. *Wager v. Sine*, 157 W.Va. 391, 201 S.E.2d 260 (1973). However, after reviewing the voluminous trial transcript, we conclude that the trial court did not err in setting aside the jury's verdict because the plaintiff failed to meet the requisite standards for a *Mandolidis* action.

In *Mandolidis*, we addressed *W.Va.Code* 23-4-2 [1969] which permits an injured employee to sue his employer if his injury results. from the "deliberate intention" of his employer.[2] In the syllabus of *Cline v. Joy Manufacturing Co.*, 172 W.Va. 769, 310 S.E.2d 835 (1983), we stated the standard a plaintiff must meet to prevail in a *Mandolidis* action:

> Under *Mandolidis v. Elkins Industries, Inc.*, [161] W.Va. [695], 246 S.E.2d 907 (1978), it is essential, in order for an injured employee to recover, that the employer's misconduct must be of an intentional or wilful, wanton and reckless character, that the employer must have knowledge and appreciation of the high degree of risk of physical harm to another created by such misconduct, and, of course, that the employer's action must be the proximate cause of the injury.

In *Cline* we distinguished between negligence and reckless misconduct and held that acts that amount to negligence do not meet the *Mandolidis* test.

There are several facts in this case that lead us to conclude that the trial court was correct in finding that the plaintiff's evidence does not support a *Mandolidis* action. The plaintiff contends that her eye injuries were caused by exposure to alkaline substances in the alley adjacent to the sinter plant where she was assigned to work but there was no showing that the particles that got into the plaintiff's eyes were alkaline in nature. The evidence merely showed that the foreman of the sinter plant was aware that the end product of the plant was caustic and that the plant area was very dusty. The foreman could testify only that there "might be" a caustic substance in the alley. Additional witnesses testified only as to the possibility of alkaline substances in the alley.

The plaintiff contends that the company's failure to issue goggles to her constitutes wilful misconduct. The evidence showed that various employees had been performing the plaintiff's job without wearing goggles for at least four years prior to 1978 without injury. In addition, the plant foreman testified that he did not wear goggles when he went into the area, nor had he seen anyone else wearing them. The plaintiff admitted that she was warned of possible harmful substances in the area on the first day of her employment. Further, there was evidence by the defendant that there had been no previous eye injuries as a result of chemical exposure, and the plaintiff presented no evidence that injuries similar to the one she sustained had been suffered previously. Clearly, there was no showing that the defendant had been notified of such injuries and failed to take action.

The plaintiff was given safety glasses to wear during her work. Although the employer may have been negligent in not providing goggles to the plaintiff instead of

2. The relevant portion of *W.Va.Code* 23-4-2 [1969] states:

If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter.

glasses, such negligence falls short of a showing of a deliberate intention on the part of the employer to cause injury to the plaintiff.

The same is true of the defendant's conduct following the plaintiff's injury. There was no evidence that the defendant had had occasion to treat chemical injuries to the eye, and no evidence that the defendant's medical employees had experience dealing with chemical injuries. Failing to flush the plaintiff's eye immediately (the standard practice for an alkaline injury), may have been negligent but there is no evidence that it was intentional.

Accordingly, the judgment of the Circuit Court of Hancock County is affirmed.

Affirmed.

McGRAW, Chief Justice, dissenting:

I dissent. The determination of whether a defendant's conduct is willful, wanton, and reckless is a jury question if evidence has been presented tending to show lack of due care or disregard of consequences. *Bremer v. Lake Erie & Western Railroad Company*, 318 Ill. 11, 148 N.E. 862 (1925); *Higbee Co. v. Jackson*, 101 Ohio St. 75, 128 N.E. 61 (1920); *see, Carson v. Talbot*, 64 Idaho 198, 129 P.2d 901 (1942); *see also Lewis v. Mosorjak*, 143 W.V. 648, 104 S.E.2d 294 (1958). Such evidence was presented. It was improper for the trial court to cast aside the jury's verdict. *Coleman v. Williams*, 42 Ill.App.3d 612, 1 Ill. Dec. 268, 356 N.E.2d 394 (1976).