355 S.E.2d 28

Shirley **MILLER**

v.

Barbara **GIBSON, Admx. of the Estate of Roy L. Gibson, II**

v.

**BOARD OF EDUCATION OF MASON COUNTY.**

No. 17253.

Supreme Court of Appeals of West Virginia.

March 11, 1987.

Ralph C. Dusic, Jr., Charleston, for appellant.

C. Dallas Kayser, Pt. Pleasant, for appellee.

Richard L. Earles, Shuman, Annand & Poe, Charleston, for Board of Educ. of Mason County.

NEELY, Justice:

This tort action arises out of an incident that occurred 5 November 1982 at Point Pleasant High School. During a pep assembly several students were invited to come onto the gymnasium floor to assist the cheerleaders in executing a new cheer. While the students were coming down to join the cheerleaders, student Todd Gibson either fell or jumped from the bleachers, grabbing teacher Shirley Miller as he did so. As a result Ms. Miller fell to the gymnasium floor, injuring her coccyx, wrist and arm.

Ms. Miller sued Todd Gibson in Mason County and Mr. Gibson filed a third-party complaint against the Mason County Board of Education. The jury returned a verdict against Mr. Gibson in the amount of $100,-000. The jury also found the Board of Education guilty of wilful, wanton and reckless misconduct. The jury found Mr. Gibson's contribution to the plaintiff's injury to have been 1%, and found the Board's contribution to Ms. Miller's injury to have been 99%. Accordingly, the jury awarded Todd Gibson a judgment of $99,000 on his third party claim against the Board. However, the trial court granted the Board's motion to offset the judgment by the amount of workers' compensation benefits received by Ms. Miller, *viz.*, $27,954.76. The Board's contribution was accordingly reduced from $99,000 to $71,045.25, and Mr. Gibson's contribution was increased from $1,000 to $28,954.76.

Five days after the initial jury verdict, Todd Gibson died by his own hand. His mother, Barbara Gibson, as administratrix of his estate, has been substituted pursuant to *W.Va.R.Civ.P.* 25(a)(1). She now appeals the offset of workers' compensation benefits against the judgment against the Board of Education. The Board of Education cross-appeals the jury's finding that it was guilty of wilful, wanton and reckless misconduct. For the reasons stated below, we reverse the judgment against the Board of Education and remand for a new trial against the Estate of Todd Gibson.[1]

---

1. Mr. Gibson's formal name was Roy Louis Gib- . son, II.

The gymnasium in which the pep assembly took place is a "combination gymnasium." It has a two tiered configuration, with retractable bleachers on each tier. The bleachers on each tier are further divided into three sections. These sections are separated by aisleways. The bleachers on the lower tier (ground floor) are eight rows high. The bleachers on the upper tier differ from those of the lower tier in that they have more rows, and a stairwell is located in their vicinity. Safety railings were provided for the side of each set of bleachers. These safety railings were always used on the upper tier bleachers.

The detachable guardrails for the downstairs bleachers had become warped and no longer fit the bleachers properly. Accordingly, approximately twenty minutes were required to install these guardrails. The downstairs bleachers were rolled out onto the gym floor for pep assemblies and basketball games. However, the bleachers were kept rolled up against the wall during the day so that physical education classes could take full advantage of the gymnasium floor. Thus, there was often insufficient time between physical education classes and pep assemblies to permit installation of the guardrails. As a result, the railings were seldom installed for pep assemblies.

The gravamen of Mr. Gibson's third party complaint against the Board is that the Board wilfully, wantonly, and recklessly neglected to attach the detachable handrails to the downstairs bleachers for the pep assembly.

Ms. Miller testified that she was late getting to the pep assembly and stood in the aisle between two sections of the downstairs bleachers. Attendance at the pep assembly was required of all teachers. Ms. Miller testified that Mr. Ralph Sayre, the principal of Point Pleasant High School, had instructed all teachers to sit in the bleachers along with the students. However, this instruction does not appear to have been enforced. Vice-principal Larry Martin testified that many teachers either stood in the aisle between the bleachers or against the wall. Indeed, Ms. Miller testified that she would have stood in the aisle during the entire pep assembly had it not been for an invitation to sit with student Lisa Thompson. Ms. Miller sat down approximately three feet from the edge of the bleachers, and testified that there was "plenty of room to sit." Ms. Miller testified that during the course of the pep assembly she had no concern about being knocked from the bleachers, nor did it ever cross her mind. Ms. Miller also testified that she was aware of no prior accidents or injuries to students using the downstairs bleachers.

Defendant Todd Gibson also testified that, to his knowledge, no student or teacher had ever fallen from the downstairs bleachers. In addition to Mr. Gibson and Ms. Miller, seven other witnesses at trial testified that they had no knowledge of any prior injurious falls from the downstairs bleachers. Superintendent William Barker testified that the bleachers in question had been inspected by a private firm in the autumn of 1982 and had been found to be "structurally sound." Mr. Barker further testified that he had thoroughly searched his accident report file, and had discovered no reports of falls from the downstairs bleachers. Nor did Mr. Barker find any citations for violations issued by any state or federal regulatory agency regarding the manner in which the downstairs bleachers were used. The Board of Education's business manager, George Miller, testified that a review of the Board's regularly kept business records revealed no other reported injuries or accidents resulting from the use of the downstairs bleachers. Additionally, several other Board witnesses testified that Ms. Miller's accident on the downstairs bleachers was a "one of a kind freak accident."

Jeffrey Roach, a student at Point Pleasant High School, testified that he had seen students fall from the bleachers on other occasions as a result of a practical joke students played on one another known as "scooting back." Mr. Roach testified that he was unaware of any injuries resulting from these falls. Mr. Roach further testified that he did not believe that any of the teachers or administrators at Point Pleas-

ant High knew about the practice of "scooting back." Mr. Lenny Barnette, the basketball coach at Point Pleasant High, testified that, to his knowledge, no one else had ever fallen from the bleachers from which Ms. Miller fell. Mr. Barnette testified that students had fallen from other bleachers, but aside from one instance in which a girl had possibly injured her arm, he knew of no injuries that had resulted from these falls.

Mr. Barnette further testified that he had told Principal Sayre about once a year for three or four years that the railings needed to be up during games. Mr. Sayre testified that he did not recall having any conversations with anyone regarding the use of the railings on the downstairs bleachers at any time before Ms. Miller's accident.

In *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978), we discussed *W. Va. Code* 23–4–2 [1969], which permits an injured employee to sue his employer if his injury results from the "deliberate intention" of his employer.[2] In the syllabus to *Cline v. Joy Manufacturing Co.*, 172 W.Va. 769, 310 S.E.2d 835 (1983), we set forth the standard a plaintiff must meet to prevail in a *Mandolidis* action:

> Under *Mandolidis v. Elkins Industries, Inc.*, [161] W.Va. [695], 246 S.E.2d 907 (1978), it is essential, in order for an injured employee to recover, that the employer's misconduct must be of an intentional or wilful, wanton and reckless character, that the employer must have knowledge and appreciation of the high degree of risk of physical harm to another created by such misconduct, and, of course, that the employer's action must be the proximate cause of the injury.

In *Cline* we noted the distinction between negligence and reckless misconduct, hold-ing that merely negligent acts do not meet the *Mandolidis* standard.

In this case, we find that the failure of the Board to install the railings, although arguably negligent, clearly did not constitute the sort of gross misconduct required for recovery under *Cline*. *See Kane v. Corning Glass Works*, 175 W.Va. 77, 331 S.E.2d 807 (1984).

Because the Board's conduct did not rise to the level required by *Cline*, *W.Va. Code* 23–2–6 [1974] bars any direct recovery by *Ms. Miller* against the Board. The question we must now address is whether an employer whose conduct is a contributing cause to the death or injury of his employee may be liable *in contribution* to a *third party* as a joint tortfeasor when the employer's conduct does not rise to the level required by *Cline*.

In *Sydenstricker v. Unipunch Products, Inc.*, 169 W.Va. 440, 288 S.E.2d 511 (1982), we held at Syl. pt. 8:

> The deliberate intent exception contained in *W.Va. Code*, 23–4–2, permits a defendant to bring a third-party action in contribution against the employer of the injured plaintiff.

Implicit in our holding in *Sydenstricker* was the proposition that a defendant may *not* sustain a third-party action in contribution against the employer of the injured plaintiff *unless* the employer's behavior constitutes the sort of gross misconduct required for recovery under *Mandolidis* and its progeny. As we noted at Syl. pt. 6 of *Sydenstricker:*

> Where the right of contribution is initially grounded in common liability in tort, courts have held that a joint tortfeasor employer is immune from a third-party contribution suit because he is initially immune from tort liability to his injured employee by virtue of the workmen's

---

2. The relevant portion of *W.Va. Code* 23–4–2 [1969] provides:

> If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have a cause of action against the employer, as if this

chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter.

In the 1983 Legislative Session, *W.Va. Code* 23–4–2 [1969] was amended. Because the 1969 statute was in effect at the time of Ms. Miller's injury, 23–4–2 [1969] is controlling in this case. *See Lancaster v. State Compensation Commissioner*, 125 W.Va. 190, 23 S.E.2d 601 (1942).

compensation statutory bar of such tort actions.

This is the position held by the vast majority of American courts, *see* Comment, "The Exclusive Remedy Controversy: Can Third Party Inequity be Alleviated Without Disturbing the Principles of Workers' Compensation?", 29 St. Louis University Law Journal 489 (1985); and it is the position we explicitly adopt today.

Accordingly, we hold today that, in an action in which his employee is the plaintiff, an employer may be liable in contribution to a third party as a joint tortfeasor only if the employer is guilty of wilful, wanton and reckless misconduct proximately causing his employee's injury or death. Because the Board was not guilty of wilful, wanton and reckless misconduct proximately causing Ms. Miller's injury, the trial court erred in denying the Board's motions for directed verdict and judgment notwithstanding the verdict. Accordingly, the judgment against the Board of Education of Mason County is reversed.

Because we believe that the trial would have proceeded in a substantially different manner had the case not been tried on the *Mandolidis* theory, the case is remanded to the Circuit Court of Mason County for a new trial of Ms. Miller's claim against the estate of Roy Louis Gibson, II.

Reversed and remanded.