375 S.E.2d 781

**John Junior DUTY**

v.

**James M. WALKER and Falcon Drilling Corporation.**

**No. 17965.**

Supreme Court of Appeals of West Virginia.

Nov. 28, 1988.

Ben B. White, III, Princeton, for Walker & Falcon Drilling Corp.

H.L. Kirkpatrick, III, Beckley, for John Duty.

PER CURIAM:

This is an appeal from a final order of the Circuit Court of Wyoming County, entered March 13, 1987, which denied the motion of the appellants, James M. Walker and Falcon Drilling Corporation, to set aside a jury verdict in favor of the appellee, John Junior Duty, in a civil action brought pursuant to W.Va.Code § 23-4-2 [1969] and our decision in *Mandolidis v. Elkins Industries, Inc.*, 161 W.Va. 695, 246 S.E.2d 907 (1978). The appellants contend that there was insufficient evidence to support the verdict. We agree, and we reverse the judgment of the circuit court.

The decedent, Robert Neal Duty, was employed by Falcon Drilling Corporation, a West Virginia corporation engaged in the business of drilling natural gas wells, as a general laborer on a four-member crew headed by appellant James M. Walker. On August 28, 1981 the crew was working the day shift on a mobile drilling rig at a site near Gilbert, Mingo County. Drilling had been completed the day before, and the task of the day shift was to move three drill collars, pipes thirty feet in length and weighing between 2,800 and 4,800 pounds each, from a metal pipe tub to adjacent tubs used for storing and transporting drilling equipment.

The crew moved each drill collar by attaching a heavy, motor-controlled steel cable, called a sand line, to both ends of the pipe with hooks. Appellant Walker, the most senior member of the crew, operated the sand line from the derrick platform to hoist the drill collar into the air. A chain at the end of a second, lighter cable, called a cat line, was then wrapped around the center of the suspended pipe and secured by the chain man, the decedent. The derrick hand, Andy Pete Rocchi, would then pull the cat line to move the suspended drill collar horizontally towards the appropriate pipe tub. The decedent and Jackie McIn-

tire, the most junior member of the crew, would stand at opposite ends of the drill collar, holding on to the sand line or the pipe itself, to guide it towards the pipe tub.

On the morning in question, Rocchi had just begun to pull the cat line to move the first drill collar towards the pipe tubs when the cat line chain slid from the center of the pipe towards the end, causing it to swing towards McIntire. McIntire pushed on her end of the pipe while the decedent pulled on his end, causing the drill collar to swing back towards him. McIntire and the decedent attempted to reverse the motion of the pipe, but were unable to do so. The decedent braced himself and attempted to stop the oncoming pipe with his body. The drill collar struck the decedent in the chest, pushed him against one of the pipe tubs and knocked him to the ground. He died of internal injuries before medical help arrived.

On January 26, 1983, the appellee, father of the decedent and administrator of his estate, instituted a civil action in the Circuit Court of Wyoming County against the appellants, alleging that his son's death was the result of their willful, wanton and reckless misconduct in failing to provide a safe workplace and to exercise reasonable care for his safety in the conduct of their operations. The appellants denied these allegations.

The case went to trial before a jury on November 10, 1986. At the close of all the evidence, the appellants moved for a directed verdict on the ground that the appellee had failed to prove deliberate intent to cause injury or death. The circuit court denied the motion and submitted the case to the jury for decision. On November 12, 1986, the jury found the appellants guilty

of willful, wanton and reckless misconduct and awarded the appellee $100,000 in compensatory damages and $50,000 in punitive damages. The appellants' motion to set aside the verdict on the ground of insufficiency of evidence was denied by the trial court in an order dated March 13, 1987.

 The only issue in this appeal is whether the evidence was insufficient to support the jury's verdict.

"In determining whether the verdict of a jury is supported by the evidence, every reasonable and legitimate inference, fairly arising from the evidence in favor of the party for whom the verdict was returned, must be considered, and those facts, which the jury might properly find under the evidence, must be assumed as true." Point 3 Syllabus, *Walker v. Monongahela Power Co.*, 147 W.Va. 825, [131 S.E.2d 736 (1963)].

Syllabus point 1, *Bolling v. Clay*, 150 W.Va. 249, 144 S.E.2d 682 (1965). "A jury verdict approved by the trial court should not be set aside on the ground that it is contrary to the evidence unless in that respect it is clearly wrong." Syllabus point 4, *Skeen v. C and G Corporation*, 155 W.Va. 547, 185 S.E.2d 493 (1971).

 The Workers' Compensation Act affords a covered employer immunity from common-law liability for the negligent injury or death of an employee at work. W.Va.Code § 23-2-6 (1985 Replacement Vol.). In *Mandolidis v. Elkins Industries, Inc.*, we discussed at length W.Va.Code § 23-4-2 [1969], which preserves an employee's common-law right of action for personal injury in the work place which results from the employer's "deliberate intention" to produce such injury.[1] 161 W.Va. at 698–706, 246 S.E.2d at 910–914.

---

1. The relevant portion of W.Va.Code 23-4-2 [1969] states:

 If injury or death result to any employee from the deliberate intention of his employer to produce such injury or death, the employee, the widow, the widower, child or dependent of the employee shall have the privilege to take under this chapter, and shall also have cause of action against the employer, as if this chapter had not been enacted, for any excess of damages over the amount received or receivable under this chapter.

This statute was amended in 1983. However, because the injury in this case occurred prior to that amendment, the provisions of the former statute are controlling here. *See Miller v. Gibson*, 177 W.Va. 535, 355 S.E.2d 28 (1987); *Kane v. Corning Glass Works*, 175 W.Va. 77, 331 S.E.2d 807 (1984); *Lancaster v. State Compensation Commissioner*, 125 W.Va. 190, 23 S.E.2d 601 (1942).

The burden the plaintiff bears in a deliberate intent action has been stated as follows:

"Under *Mandolidis v. Elkins Industries, Inc.*, [161 W.Va. 695], 246 S.E.2d 907 [96 A.L.R.3d 1035] (1978), it is essential, in order for an injured employee to recover, that the employer's misconduct must be of an intentional or wilful, wanton and reckless character, that the employer must have knowledge and appreciation of the high degree of risk of physical harm to another created by such misconduct, and, of course, that the employer's action must be the proximate cause of the injury." Syllabus, *Cline v. Joy Mfg. Co.*, [172] W.Va. [769], 310 S.E.2d 835 (1983).

Syllabus, *Kane v. Corning Glass Works*, 175 W.Va. 77, 331 S.E.2d 807 (1984). *See Miller v. Gibson*, 177 W.Va. 535, 355 S.E.2d 28 (1987); *Mooney v. Eastern Associated Coal Corp.*, 174 W.Va. 350, 326 S.E.2d 427 (1984). The same principles apply to actions against fellow employees for personal injury. W.Va.Code § 23–2–6a (1985 Replacement Vol.).[2]

At the trial below, the appellee attempted to show that the method employed by the appellants to move the drill collars was inherently unsafe and contrary to industry practice. Reuben Graham, a chemical engineer and private consultant with 22 years of experience in the oil and gas business, testified that the most commonly used method for moving such equipment was to raise the drill collar with the sand line, place boards underneath the pipe, lower it onto the boards and have the crew roll the drill collar into the pipe tubs. Mr. Graham testified that this method was safer than the cat-line method employed by the appellants because none of the crew would be under the suspended collar while it was moving. Mr. Graham further testified that in situations where it was impractical to move the drill collar using the board-rolling method, either because the pipes were square in shape or the pipe tubs were on uneven terrain, it would be safer to move the drill collars either with a bulldozer equipped with gin poles or by attaching an eight or ten foot "snub line" or "tag line" to either end of the drill collar so that the crew could guide the pipe into the pipe tubs while standing at a safe distance.

The evidence showed that the employer had used both the board-rolling method and the cat-line method in the past. There was some evidence that the cat-line method was a bit faster and less demanding physically and that on the day of the accident a contractor was waiting at the site for the crew to move the drill collars before proceeding with work on the well. There was also evidence that the employer never used snub lines or tag lines because they made it more difficult for the crew to guide the drill collars into the tubs. It was uncontested that the employer offered no safety training and that neither Rocchi nor Walker could see the decedent while they were operating the lines. It also appeared that the entire crew had worked a double shift the day before and that Walker had reported to work the day of the accident after only 3½ hours of sleep.

There are a number of facts, however, which lead us to conclude that the evidence here was insufficient to establish deliberate intent on the part of the employer. First, it appeared that the employer had used the cat-line technique for a number of years with no injuries to employees. There was no evidence that the employer had received any complaints about the safety of the cat-line method or that its use violated any federal or state safety regulations. Indeed, investigations of the accident by both the State Police and the Occupational Safety and Health Administration resulted in no charges or citations for safety violations against the employer. Moreover, it appears that the decedent had

---

**2.** On appeal, the appellee contends that the appellants were not entitled to rely on the deliberate intent standard because the defense of immunity available under W.Va.Code §§ 23–2–6 and 23–2–6a was neither pleaded nor proven at trial. The record shows, however, that throughout the proceedings below the parties treated the case as a *Mandolidis*-type action, that the appellants amended their pleadings prior to trial to assert the immunity defense and that the appellants put on evidence at trial that Falcon Drilling Corporation was a covered employer under the Workers' Compensation Act. Accordingly, the appellants were entitled to rely on the statutory immunity against liability for negligent injury.

worked for the employer for approximately one year and was familiar with the cat-line technique. The testimony indicated that it was standard procedure for the chain man to wrap the cat line chain around the drill collars twice before securing it. On the day of the accident, however, the cat line chain had been wrapped around the pipe only once. The appellee's expert, Mr. Graham, admitted that had the chain been wrapped around the drill collar once more, it would have been less likely to slip.

In these circumstances, we cannot say that the evidence was sufficient to support a verdict for the appellee. *See Nedley v. Consolidation Coal Company,* 578 F.Supp. 1528 (N.D.W.Va.1984). While the appellants may have been negligent in not using another technique for moving the drill collars or in the manner in which they employed the cat-line method, such negligence falls short of a showing of deliberate intention on the part of the employer to cause injury or death under the standards of *Mandolidis.* *See Dreyer v. Weirton Steel,* 178 W.Va. 540, 363 S.E.2d 127 (1986) (per curiam); *Miller v. Gibson,* 177 W.Va. at 538, 355 S.E.2d at 31; *Cline v. Joy Mfg. Co.,* 172 W.Va. at 774–775, 310 S.E.2d at 840–841. Accordingly, we conclude that the verdict in favor of the appellee was clearly wrong.

For the reasons stated herein, we conclude that the Circuit Court of Wyoming County erred in affirming the verdict below. Accordingly, the judgment of the lower court is reversed, the verdict is ordered set aside, and the case is remanded for further proceedings.

REVERSED AND REMANDED.

McGRAW, J., dissents and reserves the right to file a dissenting opinion.

McGRAW, Justice, dissenting:

I dissent for the reason that deliberate intent is a subjective determination and all in the eye of the beholder—in this case, the jury. Accordingly, I would affirm the circuit court's refusal to set aside the jury's verdict.