881 F.2d 1069
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jamie S. BENNETT, Administratrix of the Estate of Donald
Bennett, Deceased, Plaintiff-Appellant,
v.
NATIONAL STEEL CORPORATION, Defendant-Appellee.
and
Weirton Steel Corporation: Consolidated Rail Corporation;
International Mill Services, Inc., Defendants.
 No. 88-2853.
 United States Court of Appeals, Fourth Circuit.
 Argued June 5, 1989.
Decided July 20, 1989.
 
 Sterl Franklin Shinaberry (Frank Venezia, G. David Brumfield on brief) for appellant.
 Mark A. Colantonio (Carl N. Frankovitch, James G. Connolly, Volk, Frankovitch, Anetakis, Recht, Robertson & Hellerstedt, on brief) for appellee.
 Before CHAPMAN and WILKINSON, Circuit Judges, and RICHARD L. VOORHEES, United States District Judge for the Western District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 The only question in this appeal is whether the district court properly granted summary judgment against plaintiff-appellant, thereby dismissing her claim for damages resulting from the death of her husband. Because plaintiff's husband was killed while at work and while an employee of the National Steel Coporation, the legal issue is whether there are sufficient facts to allow the plaintiff to advance her claim outside of West Virginia's limited workers' compensation remedy. We affirm.
 
 
 2
 Summary judgment should be granted against a party only if the evidence reveals "there is no issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing a district's court grant of summary judgment, this court applies the same standard, and it must consider the inferences from the underlying facts in a light most favorable to the plaintiff. A reversal of summary judgment is required if it appears from the record that there is an unresolved issue of material fact, Helm v. Western Maryland Ry. Co., 838 F.2d 729, 734 (4th Cir.1988), but summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).
 
 
 3
 In this case plaintiff's decedent, Donald Bennett, was a railroad brakeman at Weirton, West Virginia's National Steel plant. On August 25, 1981, Bennett was called to work on the 4:00 P.M. to midnight shift, in the plant's ore dumping department. Bennett had been a brakeman at National for about two years, and, although he did not normally work in the ore dumping area, he had worked there on occasion before August 25.
 
 
 4
 The task of the ore dumping department was to empty iron ore from railroad cars. A large machine, the ore dumper, performed the physical act of emptying the cars by turning them upside down. As part of the five-man ore dumping crew, Bennett's job was to help move emptied cars down the track and away from the dumper. The process worked as follows: first, each loaded car in a train, usually consisting of 40 to 50 cars, would be unloaded by the dumper; second, the cars would be pushed by an engine away from the immediate area of the dumper; third, the field brakeman, in this case Bennett, would determine whether each car was properly coupled and whether the cars' brakes were set; fourth, the brakeman moved the train away from the dumper by releasing the brakes on the forward cars, and as the cars began moving, down a gradient, the brakeman adjusted the cars' brakes to control speed. This required getting off the first car while the line of cars was moving and proceeding to four or five cars, getting on and off each, and adjusting the brakes. The cars would slow and eventually stop.
 
 
 5
 There were no eyewitnesses to the accident that claimed Bennett's life, and the details are a matter of contention. Evidence introduced by both sides confirms that the accident took place just after 8:00 P.M. Bennett had just received an order to move a train of 41 cars away from the dumper, in the manner just described. He proceeded to the work site, but was never seen alive again. Appellant introduced expert testimony that Bennett's death resulted when, in the process of slowing the train by changing cars and setting brakes, Bennett stumbled in the twilight on slag and debris adjacent to the track and fell under the wheels of the moving train. Coworkers later discovered his body.
 
 
 6
 In West Virginia, Mandolidis v. Elkins Industries, Inc., 246 S.E.2d 907 (W.Va.1978), established the standard to be used in determining whether a claim can proceed outside the workers' compensation system. Although the holding of Mandolidis was altered by statute in 1983, the statutory changes apply only to those accidents occurring after May 7, 1983, almost two years after this accident. W.Va.Code Sec. 23-4-2 (1985). As a consequence, Mandolidis governs our disposition of this case. The rule of Mandolidis is that "in order for an injured employee to recover, ... the employer's misconduct must be of an intentional or wilful, wanton and reckless character, that the employer must have knowledge and appreciation of the high degree of risk of physical harm to another created by such misconduct, and, of course, that the employer's action must be the proximate cause of injury." Duty v. Walker, 375 S.E.2d 781, 784 (W.Va.1988); Cline v. Joy Manufacturing Co., 310 S.E.2d 835 (W.Va.1983); Mandolidis, 246 S.E.2d at 910-914.
 
 
 7
 Although the district court believed that the employers' failure to dispose of the debris adjacent to the track was enough, for summary judgment purposes, to establish proximate cause, and there might be a sufficient factual dispute as to the employer's knowledge and appreciation of the high degree of risk of the working conditions, the plaintiff did not present evidence that National's conduct was wilful or reckless, the third essential element in the Mandolidis test. Failure to "make a showing sufficient to establish the existence of an element essential" to plaintiff's case will justify summary judgment under Celotex v. Catrett, supra.
 
 
 8
 Wilfulness in West Virginia has been defined as "premeditation or knowledge and consciousness that injury is likely to result from the act done or the omission to act." Mandolidis, 246 S.E.2d at 914. The words wilful, wanton, and reckless are synonymous, and they require that the actor "desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Cline, 310 S.E.2d at 838. This court has stated that in a Mandolidis action "the resulting injury could not be regarded as accidental in any meaningful sense of the word." Smith v. ACF Industries, Inc., 687 F.2d 40, 42 (4th Cir.1982). Finally, Judge Kidd has elaborated a list of factors pertinent to a determination of wilfulness or recklessness. These include a finding that the dangerous condition caused previous injury, that the condition is violative of law or practice, whether there was any training given to employees relative to the condition, the employer's knowledge of the condition's propensity to injure, the employer's response to employee complaints about the condition, the reason the condition existed, and the amount of time the condition was allowed to exist. Nedley v. Consolidation Coal Co., 578 F.Supp. 1528, 1532 (N.D.W.Va.1984). The Mandolidis standard is high and only as a result of most egregious acts will a plaintiff be able to proceed past summary judgment.
 
 
 9
 The facts in this case fall short of the standard. Plaintiff argues that both the process of dumping long trains and the slag buildup on the track, in combination with the employer's awareness of the problems, present the kind of conditions that suggest wilful and wanton conduct. First, there was no evidence that over the course of several decades of this practice of dumping ore trains, another brakeman had ever been injured during the dumping process, although about ten years prior to Bennett's accident, a worker had apparently slipped on accumulated debris. Second, the company's practices were not, before the accident, plainly violative of law or custom, although after the accident the company was issued a citation by OSHA because of the build up of debris. It is not enough that other companies may have abandoned the practice used at National. Third, although there was some evidence of the employer's awareness of the slag problem, and some evidence of employee complaints, few employees seemed very concerned about the conditions, and, considering the length of time the process of dropping cars was in force and the slag existed, the few complaints and lack of corrective action do not demonstrate deliberate indifference.
 
 
 10
 The problem with plaintiff's position, as the district court recognized, is not that it does not set forth evidence of negligence or even gross negligence but it does not rise to the reckless, willful and wanton level. If this were an ordinary negligence case, there can be little doubt but that plaintiff would survive a summary judgment motion. But this is not an ordinary negligence case. The injury arose in an employment context and the plaintiff is covered by workers compensation insurance and such is his exclusive remedy against his employer unless he can prove the kind of wilful activity or inactivity by the defendant that is required by Mandolidis.
 
 
 11
 In 1913 the West Virginia legislature decided that it better suited public interest to abrogate the negligence standard in the workplace. The state's Workers' Compensation Act promised to provide prompt and fair disposal of injury claims and at the same time to provide workers and their dependents with adequate compensation for injuries arising out of the course of employment. Poccardi v. Ott, 96 S.E. 790, 791 (W.Va.1918). For workers, the trade-off was that while they were released from the burden of litigation and proof of fault, they lost the right, except under the most extreme conditions of culpability, to ordinary tort damages. Until such time as the West Virginia legislature decides that this system no longer serves public ends, this court is bound to recognize the broad jurisdictional sweep of workers' compensation. The judgment of the district court is affirmed.
 
 
 12
 AFFIRMED.